Susan R. WEXNER, Plaintiff–Appellant,

v.

FIRST MANHATTAN CO., John R. Loomis and Joseph Stein, Jr., Individually and as Co–Partners of First Manhattan Company, Defendants–Appellees.

No. 984, Docket 89–9145.

United States Court of Appeals,
Second Circuit.

Argued March 9, 1990.

Decided April 20, 1990.

Edmund H. Kerr, New York City (William A. Groll, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for plaintiff-appellant.

John Dickey, New York City (Norman Feit, Marc S.T. Dworsky, Sullivan & Cromwell, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, MESKILL, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Susan R. Wexner appeals from a judgment of the United States District Court for the Southern District of New York (Vincent L. Broderick, *Judge*) dismissing her amended complaint against defendants-appellees First Manhattan Co. ("First Manhattan"), John R. Loomis and Joseph Stein, Jr., pursuant to Fed.R.Civ.P. 9(b). On appeal, Wexner contends that the district court erred in finding that the amended complaint failed to allege, with the requisite particularity, sufficient nonconclusory facts to sustain her claims of fraud under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1988), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988).

For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

In 1967, plaintiff-appellant Susan Wexner obtained 10 per cent of the common stock of the predecessor of The Limited, Inc. ("The Limited"). At the time, the company was a small business owned and operated by Wexner's family. Since that time, The Limited has developed into a publicly traded corporation with common stock registered for trading on the New York, Pacific and London Stock Exchanges. Over the years, Wexner's investment appreciated and her common stock holdings multiplied as a result of several stock splits and common stock dividends.

In May 1986, Wexner met with defendant-appellee John R. Loomis, a partner and registered representative of First Man-

hattan, to discuss the possibility of First Manhattan serving as Wexner's broker and investment adviser. Loomis represented that First Manhattan was qualified to serve Wexner's financial needs. During these meetings, Loomis also suggested that Wexner should consider liquidating a portion of her holding of The Limited common stock.

On June 6, 1986, Wexner hired First Manhattan. Shortly thereafter, Wexner consulted with Loomis and David S. Gottesman, First Manhattan's managing partner, and decided to sell approximately 890,000 shares of her common stock. Wexner instructed Loomis that, because of her family ties to The Limited, she did not want the sale of her stock to "disrupt the market" or "disturb the stock price." Loomis told Wexner that he understood the situation and would "feed the stock gently" into the market. Over a three week period in June 1986, First Manhattan sold Wexner's shares in a series of at least 25 trades. Apparently, Wexner was satisfied with these transactions and the means by which they were effectuated.

In September 1986, Wexner contacted Loomis to seek his advice about additional sales of The Limited common stock. As a result of these consultations, Wexner authorized First Manhattan to sell 2,500,000 shares of her stock and again informed Loomis that she did not want to disrupt the market. Loomis advised Wexner that the shares would be sold in large block transactions to avoid disrupting the market. After several days passed without any of the stock being sold, Wexner inquired about the delay. Loomis explained that the stock was not being sold because there was "one other active trader in the market" and there was a need to "camouflage" Wexner's sales.

In the days immediately following Wexner's decision to sell the second block of stock, the market price of The Limited declined from a price range for the previous three weeks of $30–$32 per share to a price of $27.50 per share on September 11, 1986. During the following two weeks, The Limited traded within a price range of $24.75–$28.25 per share. When Wexner asked about this decline, Loomis explained that the "whole market was off" and that other conditions, unrelated to Wexner's selling program, were responsible for the downward trend. Although the whole market was in decline, The Limited's price decline was greater than that of the Dow Jones Industrial Average and the Standard & Poors 500 Composite Average.

From September 17 through September 30, 1986, First Manhattan sold 1,100,000 shares of Wexner's stock in eight separate transactions at an average price of $26.70 per share. On or about October 1, 1986, defendant-appellee Joseph Stein, Jr., a First Manhattan partner in charge of its Institutional Trading Department, telephoned Wexner and informed her that he had located a "block buyer" to purchase the remaining 1,400,000 shares of her common stock at a price of $25.00 per share. When Wexner expressed displeasure with the offered price, Stein explained that in order to effect a "block trade" the seller had to accept a price below the quoted market price. In a subsequent conversation, Stein informed Wexner that the block buyer was "not a snake" and was a "customer we [First Manhattan] do business with regularly." On October 1, 1986, Wexner agreed to sell the remaining 1,400,000 shares in a single block transaction at a price of $25.50 per share. This sale was actually made to sixteen purchasers, at least three of whom were money managers acting on behalf of their clients.

As a result of the September and October transactions, Wexner sold 2,500,000 shares of The Limited common stock for approximately $65,000,000. Shortly after Wexner's selling program was completed, the market price of The Limited rebounded.

In September 1987, Wexner brought suit against First Manhattan, Loomis and Stein. The original complaint was dismissed for failure to plead fraud with particularity. On October 19, 1988, Wexner filed an amended complaint which is the subject of this appeal. Wexner's amended complaint asserts three overlapping claims of fraud under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and section 10(b)

of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). First, Wexner alleges that the defendants-appellees caused the decline in The Limited common stock's price, in September 1986, by disclosing to market professionals Wexner's intention to sell a large block of her stock. Second, Wexner claims that the October 1, 1986 block sale of her stock was a "corrupt bargain" between the defendants-appellees and the purchasers of the stock. Third, the amended complaint alleges that the defendants-appellees made various false and misleading statements in connection with the sale of Wexner's stock. In addition, the amended complaint alleges pendent claims of common law fraud, deceit, breach of fiduciary duty, gross negligence and failure to supervise, which are not a subject of this appeal.

By order dated October 17, 1989, the district court granted defendants-appellees' motion to dismiss, holding that the amended complaint failed to plead fraud with sufficient particularity, as required by Fed. R.Civ.P. 9(b). This appeal followed.

## DISCUSSION

### I. *Compliance with Fed.R.Civ.P. 9(b)*

Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a "strong inference" of fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *see Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir. 1990).

Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986); *see Stern v. Leucadia*

*Nat'l Corp.*, 844 F.2d 997, 999 n. 1 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *DiVittorio v. Equidyne Extractive Ind.*, 822 F.2d 1242, 1247–48 (2d Cir.1987); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard. *Cf. Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987); *Modern Settings v. Prudential–Bache Sec.*, 602 F.Supp. 511, 514 (S.D.N.Y.1984).

The amended complaint, which is pleaded largely on information and belief, alleges that First Manhattan, Loomis and Stein "leaked" confidential information regarding Wexner's intention to sell a large block of The Limited common stock. Conspicuously absent, however, are any allegations as to who leaked Wexner's plans, or when and to whom the information was leaked. Wexner argues that First Manhattan's leak of confidential information, as well as the defendants' fraudulent intent, can be inferred from the supporting statement of facts. We do not agree.

The amended complaint alleges, *inter alia*, that the price of The Limited common stock declined when Wexner attempted to sell 2,500,000 shares of stock and rebounded when the selling was completed. The amended complaint also states that a research brief, issued by an investment bank shortly after Wexner's final stock transaction, reported that The Limited common stock had been noticeably weak because of an aggressive seller of several million shares. At best, these allegations give rise to an inference that certain market professionals were aware of Wexner's selling efforts. There is, however, no meaningful support from which it can reasonably be inferred that this resulted from First Manhattan's willful, knowing or reckless disclosure of Wexner's plans.

Similar Rule 9(b) deficiencies plague Wexner's claim that First Manhattan,

Loomis and Stein orchestrated a block sale of her securities as part of a "corrupt bargain" with three favored customers. The amended complaint alleges, on information and belief, that First Manhattan sold a 1.4 million share block of stock to sixteen purchasers, three of whom paid "a price substantially below that price that would have been obtained in the absence of the corrupt bargain." In return, these purchasers purportedly agreed to give First Manhattan a favorable price on other unrelated securities transactions.

The amended complaint again fails to set forth with particularity the facts of this allegedly "corrupt bargain." There is no mention of any definite terms of the bargain. Nor is there any explanation of what First Manhattan was to gain from its favored customers as a consequence of defrauding Wexner. Moreover, the mere fact that First Manhattan arranged to sell Wexner's stock to "regular customers" and explained that sellers of large blocks of stock command less than the quoted market price is not a sufficient factual basis upon which to base a claim of securities fraud. Indeed, Wexner concedes that First Manhattan disclosed this information to her prior to the transaction. Thus, the allegations do not provide a factual basis from which an inference of fraud can be drawn.

Finally, Wexner contends that she was induced to sell her stock by means of false and misleading statements regarding First Manhattan's ability to discreetly sell the stock and First Manhattan's explanation of the declining price of The Limited. Indeed, Wexner claims that the defendants made the misrepresentations in an attempt to cover-up their fraudulent conduct. There is no question that Wexner has adequately identified the statements alleged to be misrepresentations and properly indicated when, where and by whom they were made. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The amended complaint nonetheless fails to allege circumstances that give rise to a strong inference that the defendants knew the statements to be false. *See Ouaknine*, 897 F.2d at 79–80.

Wexner argues that the defendants' fraudulent intent can be inferred from the fact that First Manhattan leaked confidential information and caused the price of The Limited common stock to decline. As discussed above, we have determined that these allegations are conclusory and unsupported by the amended complaint. That determination undermines the basis for inferring the defendants' fraudulent intent. Clearly, an inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative. *See Stern*, 844 F.2d at 1004; *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971); *see also Madonna v. United States*, 878 F.2d 62, 66 (2d Cir.1989).

## II. *Private Right of Action under Section 17(a)*

As an additional ground for affirming the district court's judgment, the defendants-appellees argue that section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), does not support a private cause of action. In *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), we held that a private cause of action is available under section 17(a). In large part the holding in *Kirshner* was based on a determination that section 17(a) is essentially identical to section 10(b) of the Securities Exchange Act of 1934. *Kirshner*, 603 F.2d at 241 (citing *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)); *see also* L. Loss, *Fundamentals of Securities Regulation* 1149 (1983 & Supp.1986). This determination has been severely, and perhaps fatally, undercut by the Supreme Court's ruling to the contrary in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

Indeed, the reasoning of *Kirshner* has been questioned by this Court, *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985); *Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir.1984), and has suffered criticism from legal schol-

ars. *See* L. Loss, *supra,* at 1148–50; R. Jennings & H. Marsh, *Securities Regulation* 890–892 (6th ed. 1987). Numerous district courts of the Circuit have concluded, notwithstanding *Kirshner,* that no private cause of action can be implied from section 17(a). *See, e.g., Dymm v. Cahill,* 730 F.Supp. 1245 (S.D.N.Y.1990); *Dale v. Prudential–Bache Sec., Inc.,* 719 F.Supp. 1164, 1166–67 (E.D.N.Y.1989); *Tobias v. First City Nat'l Bank & Trust Co.,* 709 F.Supp. 1266, 1274–76 (S.D.N.Y.1989); *Griffin v. McNiff,* [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,389, 1989 WL 80451 (S.D.N.Y. March 13, 1989); *Lazzaro v. Manber,* 701 F.Supp. 353, 365–66 (E.D.N.Y.1988); *Boley v. Pineloch Associates,* 700 F.Supp. 673, 677–78 (S.D.N.Y.1988); *Bruce v. Martin,* 691 F.Supp. 716, 724–26 (S.D.N.Y.1988); *SSH Co. v. Shearson Lehman Bros., Inc.,* 678 F.Supp. 1055, 1058–59 (S.D.N.Y.1987); *Anderson v. Lowrey,* 667 F.Supp. 105, 109–10 (S.D.N.Y.1987); *Cohen v. Goodfriend,* 665 F.Supp. 152, 155–56 (E.D.N.Y.1987); *Kaufman v. Amtax Planning Corp.,* 669 F.Supp. 573, 576 (S.D.N.Y. 1986); *Ackerman v. Clinical Data, Inc.,* No. 84 Civ. 5400, 1985 WL 1884 (S.D.N.Y. July 11, 1985) (LEXIS, Genfed library, Dist file). It is apparent that the vitality of our holding in *Kirshner* is in doubt, and the existence of a private right of action under section 17(a) is in need of re-examination.

Nevertheless, in light of our determination that the district court should be affirmed on other grounds, we find it neither necessary nor appropriate to reach this issue today.

## CONCLUSION

Based on the foregoing, the judgment of the district court dismissing plaintiff-appellant's amended complaint is affirmed.