**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Vincent MILITANO, Milton Sonneberg, John J. Cranley, Jr., Thomas Core, Robert Sayegh, John Kolb and Carl Verone, Defendants.**

**No. 89 Civ. 0572 (JFK).**

United States District Court, S.D. New York.

Aug. 7, 1991.

Edwin H. Nordlinger, Deputy Adm'r, Div. of Enforcement, S.E.C. (Robert B. Blackburn, Carmen J. Lawrence, Daniel R. Schnipper, Ann C. Myers, Bohdan S. Ozaruk, of counsel), New York City, for plaintiff.

Jonathan Kord Lagemann, New York City, for defendant John Kolb.

## OPINION AND ORDER

KEENAN, District Judge:

Defendant John Kolb seeks an Order dismissing the First Amended Complaint (the "Complaint") of plaintiff Securities and Exchange Commission (the "Commission" or the "SEC") on the ground that it fails to state a claim against Kolb upon which relief can be granted and it fails to allege fraud against Kolb with particularity. Fed.R.Civ.P. 12(b)(6) and 9(b). Oral argu-

ment was heard on August 5, 1991, and decision was reserved.

No other defendant is participating in this motion. Defendants Vincent Militano and Milton Sonneberg each have consented to the entry of judgment against them.[1] Defendants Thomas Core and John J. Cranley, Jr. each have answered the Complaint. Defendants Robert Sayegh and Carl Varrone have neither answered nor moved in response to the Complaint.

### Allegations Against Kolb

The Commission alleges that Kolb, at the behest of defendant Vincent Militano, who at the time was a registered representative at Moore & Schley, Cameron & Co. ("Moore & Schley"), opened margin accounts, obligating Kolb to pay for securities purchases in the accounts. Kolb allegedly deliberately refused to pay for securities transactions in his accounts, including the purchase of hundreds of thousands of Chase Medical Group Inc. ("Chase Medical") common shares, after he received many notices demanding payment. In addition, Kolb allegedly improperly withdrew profits from those transactions. Based on these allegations, the Commission contends that Kolb violated Section 7(f) of the Securities Exchange Act of 1934 (the "Exchange Act") and Regulation X.

Kolb also allegedly aided and abetted his co-defendants' violations of Section 9(a)(2) and 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder with respect to the manipulation of Chase Medical stock. Kolb allegedly knew that he was involved in securities law violations because, among other things, he knowingly failed to pay for Chase Medical shares purchased in his accounts and he agreed to kick back some of the profits from the illegal purchases. The Commission alleges that the Kolb accounts were used to park Chase Medical securities as part of a scheme to manipulate the stock.

Kolb allegedly took substantial steps to assist the manipulation, as is illustrated by his opening the accounts and representing to Securities Settlement Corp. ("SSC"), that he would pay for the shares he purchased. SSC acted as the broker-dealer for securities transactions on behalf of Moore & Schley customers. After he opened these accounts, Kolb gave Militano the power to use them to accumulate, or "park", Chase Medical securities. Kolb purchased thousands of Chase Medical shares, knowing that he did not have the funds to pay for them, and he ignored numerous demands for payment from SSC. The acts of Kolb allegedly were done with knowledge of their illegality, as is evidenced by the false statements made by Kolb to the Commission's staff about his involvement and that of others in the on-going scheme to manipulate. Based on these allegations, the Commission contends that Kolb aided and abetted violations of the Exchange Act, Sections 9(a)(2) and 10(b), 15 U.S.C. §§ 78i(a)(2) and 78j(b), and Rule 10b–5 promulgated thereunder, in connection with transactions in the securities of Chase Medical.

The background facts set forth by the Commission are as follows. Kolb is the co-owner/operator of the Cathedral Service Station ("Cathedral") in Franklin Square, New York. Kolb and Militano first met in 1986 and became friends. Through his friendship with Militano, Kolb opened a joint securities account with his wife in April 1987 (the "Joint Account") and a second account in the name of his business (the "Cathedral Account"). (Complaint ¶¶ 16 and 92). Subsequent to opening the Cathedral Account, Kolb agreed to and did kick back some of his trading profits to Militano. (Complaint ¶ 96).

Kolb accepted all of the trades executed in his two accounts pursuant to an oral grant of discretionary authority to Militano. (Complaint ¶ 95). Kolb deliberately ignored at least fourteen demands for the deposit of additional funds or securities, thereby engaging in an illegal scheme, using proceeds of profitable trades to pay for

---

1. The dollar amount of liability and disgorgement as to defendant Sonneberg has not been agreed upon.

securities purchased in his undermargined accounts. Kolb also withdrew money from his undermargined accounts in violation of Regulation X. The margin violations allowed Kolb to profit illegally from over $1 million in Chase Medical purchases without investing his own assets. (Complaint ¶¶ 100–102).

### Discussion

In considering a motion to dismiss, the Court must view the Complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985). Further, the allegations set forth in the Complaint must be accepted as true. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). In considering a motion to dismiss for failure to state a claim upon which relief can be granted, dismissal should result only if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). "However great the odds against a plaintiff's ultimate success, if the complaint states a claim, he is entitled to his day in court." *Ballan v. Wilfred Am. Educ. Corp.*, 720 F.Supp. 241, 247 (E.D.N.Y.1989) (citing *Index Fund, Inc. v. Hagopian*, 609 F.Supp. 499, 510 (S.D.N.Y.1985)).

Defendant describes himself as a high school graduate and laborer, who was an "unwitting 'parking lot.'" (Def.'s Mem. at 1). He argues that his accounts were traded by Militano on a discretionary basis, and that he had no idea that Militano and Sonneberg were "up to" anything. (*Id.* at 2). Kolb states that he "believes that he is the subject of the SEC's attention because of a modest profit in the accounts," which

Kolb realized in December 1980, when Militano, exercising his discretion, liquidated most of the accounts and delivered the funds to Kolb. Kolb states that he "did nothing wrong, ... paid tax on these profits and ... incurred substantial attorneys' fees in voluntarily cooperating with the SEC's Chase Medical investigation, [and] no longer has the funds which the SEC seeks for its budget." (*Id.*).[2]

■ Kolb's main argument is that because Militano had control over his two accounts, the Commission cannot and has not alleged that he acted with "scienter", "knowledge" or that anything he did proximately caused any of the alleged securities violations. The Commission argues that Kolb is attempting to obtain dismissal by summary judgment by arguing that the evidence is insufficient to support a claim against him. The Commission correctly argues that such arguments are inappropriate on a Rule 12 motion.

### A. Margin Violations

■ Section 78g(f)(1) of Title 15 provides in part as follows:

"It is unlawful for any United States person ... to obtain, receive, or enjoy the beneficial use of a loan or other extension of credit from any lender ... for the purpose of (A) purchasing or carrying United States securities ... if, under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited or would be prohibited if it had been made or the transaction had otherwise occurred in a lender's office or other place of business in a State."

15 U.S.C. § 78g(f)(1). Regulation X [12 C.F.R. § 224.1] implements Section 7(f) of the Exchange Act, *supra,* "the purpose of which is to require that the credit obtained

---

2. The Commission requested permission to file a sur-reply brief to remedy some inaccurate statements made by Kolb. The allegation by Kolb that the Commission seeks to fill its coffers through Kolb's disgorgement is one of them. Kolb refers to the Commission as a "self-funding prosecutorial agency" and contends that a proceeding such as this action by such an

agency against "a public customer who merely opened discretionary accounts is morally bankrupt." (Kolb Reply Mem. at 2). The Commission contends that fines, penalties and disgorgement do not enhance its budget. This fact does not have any bearing on this motion, and the Court finds that no further submissions on the topic are necessary.

within or outside the United States complies with the limitations of the Board's Margin Regulations G, T, and U." 12 C.F.R. § 224.1(a).

The purpose of Regulation T [12 C.F.R. § 220.1] is to "regulate extensions of credit by and to brokers and dealers.... It imposes, among other obligations, initial margin requirements and payment rules on securities transactions." 12 C.F.R. § 220.-1(a). Regulation T sets the percentage of each securities purchase that must be deposited or maintained with the lender. It provides that (1) a specific percentage of the purchase price in cash or other marginable securities must be deposited or held in a margin account in conjunction with each securities purchase, and (2) cash cannot be withdrawn from the account if the withdrawal would create or increase a margin deficiency.

The Commission contends that when purchases were made in the Kolb accounts, he was required to have or deposit in his account 50% of each purchase in cash or other marginable securities. It is alleged that Kolb willfully caused credit to be extended to his accounts in contravention of Regulation T. The allegations of the Complaint state that Kolb opened margin accounts, did not deposit any funds or securities in the Cathedral Account in connection with its opening, and that the Joint Account and the Cathedral Account both were undermargined. (Complaint ¶¶ 93 and 100). It is also alleged that Kolb withdrew $41,-000 from his margin accounts despite the margin deficiencies in the accounts. (Complaint ¶ 102). By purchasing additional securities and failing to deposit the requisite margin or by withdrawing money from his undermargined accounts, Kolb caused SSC, the broker-dealer, to violate Regulation T. *See* 12 C.F.R. § 220.4(e).

Kolb argues that Regulation X exempts all margin borrowers from Section 7(f) unless the borrower "willfully causes the credit to be extended in contravention of Regulations G, T and U." Kolb argues that the "SEC's conclusory allegations that Kolb 'willfully caused' SSC's violation is not sufficient to bring Kolb outside the presumption that a public customer is not liable for a member firm's violation." (Def.'s Mem. at 7). The Court notes that by this statement, Kolb indicates that the SEC has alleged that he willfully caused the SSC violation. Therefore, the SEC has pleaded that Kolb was more than just a passive investor.

Kolb also contends that the SEC has not alleged "aider and abettor liability." Kolb argues that the SEC cannot *prove* that Kolb proximately caused SSC's Regulation T violations where, as here " 'other possible factors could account for' the Reg[ulation] T violations." (Def.'s Mem. at 8) (emphasis added). This is a factual argument. Kolb again overlooks the pleading requirements and jumps to the facts. In deciding a Rule 12 motion, the Court cannot consider whether or not there were intervening factors causing SSC's violations of Regulation T. The only question is whether or not the SEC has properly alleged causation.

In *Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 474 F.Supp. 286 (D.Conn.1979), the court stated, "It is now generally recognized that under § 7(f) of the Securities Exchange Act, 15 U.S.C. § 78g(f), and Regulation X, 12 C.F.R. § 224, the responsibility for complying with margin regulations rests on investors as well as brokers." 474 F.Supp. at 290 n. 7. Kolb argues, however, that in an earlier *Palmer* decision the court stated that Regulation X reflects "no intent to make small, unsophisticated investors responsible for complying with margin requirements." (Def.'s Mem. at 10) (citing *Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 427 F.Supp. 915, 921 (D.Conn.1977)). In *Palmer,* however, the court concluded that the investors merely acquiesced in transactions which they thought to be legitimate.

In the instant case, however, the Commission alleges that Kolb knowingly opened accounts and intentionally failed to pay for securities purchased and sold in his accounts and otherwise knowingly failed to comply with the requirements of a margin account. Merely attempting to align himself with the passive investors in *Palmer* does not make Kolb one, too. The Com-

plaint alleges sufficiently that the activities in Kolb's accounts occurred with his knowledge and that he knowingly violated the margin requirements at issue. Whether or not the Commission has sufficient proof to support these allegations is a question for another day.

## B. Aiding and Abetting

In order to properly plead aiding and abetting liability, the Commission must allege (1) the existence of a securities law violation by a primary party; (2) scienter on the part of the aider and abettor; and (3) that the aider and abettor rendered substantial assistance in the achievement of the primary violation. *National Union Fire Ins. v. Turtur*, 892 F.2d 199, 206–207 (2d Cir.1989). For purposes of this motion, Kolb assumes that the Commission has alleged a primary violation by another party. The only elements at issue, then, are scienter and substantial assistance.

### 1. *Scienter*

Kolb argues that the allegations make it clear that he was "an entirely passive and unwitting participant in Militano's and Sonneberg's manipulation scheme." (Def.'s Mem. at 14). Kolb states, "[w]hile the SEC does plead a naked conclusion that Kolb 'knew or was reckless in not knowing that Militano's and Sonneberg's conduct was unlawful ...' (Complaint ¶ 158), not one fact has been alleged which, if proven, could establish that Kolb had knowledge of unlawful conduct on the part of Militano and Sonneberg." (Def.'s Mem. at 18). Kolb argues that the SEC has failed to allege that Kolb had knowledge of any alleged misstatements made by Sonneberg and Militano to their other public customers. Nor has the SEC alleged that Kolb assisted in the preparation or dissemination of the statements with knowledge of their falsity. Further, Kolb argues that since he did not owe a fiduciary duty to any defrauded party, an allegation of recklessness is not sufficient to meet the scienter requirement. Rather, the SEC must allege a " 'high conscious intent' to aid and abet a securities law violation." *In re Union Carbide Consumer Products Business*

*Sec. Litig.*, 666 F.Supp. 547, 563 (S.D.N.Y.1987) (quoting *IIT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir.1980)).

The Commission argues, however, that its allegations of scienter meet the pleading requirements, in that for a nonfiduciary aider and abettor such as Kolb, it is enough that he have had a general awareness that his activity "was part of an overall activity that is improper." *Woodward v. Metro Bank*, 522 F.2d 84, 95 (5th Cir.1975).

The Complaint alleges that Kolb knew or was reckless in not knowing that Militano's and Sonneberg's conduct was unlawful and/or involved violations of Sections 9(a)(2) and 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. (Complaint ¶ 158). The Complaint alleges that Kolb opened margin accounts through which 203,000 Chase Medical shares were purchased, knowing that he could not pay for them. Kolb disregarded at least fourteen demands from SSC for payment. Further, Kolb took for his personal benefit most of the extraordinary profits from the Chase Medical transactions after paying a kickback to defendant Militano. The Complaint also states that, to further the scheme, Kolb falsely disclaimed to the Commission staff his role in the fraud. (Complaint ¶ 98). The Court finds that, based on the unusual facts alleged in the Complaint, the Commission has sufficiently set forth allegations of scienter.

### 2. *Substantial Assistance*

The third element of aider and abettor liability is that the aider-abettor rendered "substantial assistance" in achieving the primary violation. *Turtur*, 892 F.2d at 207. The Commission alleges that Kolb substantially assisted the commission of the fraud by opening margin accounts (Complaint ¶ 92); permitting his accounts to warehouse Chase Medical common shares without paying for them (Complaint ¶ 95); ignoring demands for payment on at least fourteen occasions (Complaint ¶ 100); and paying defendant Militano a kickback. (Complaint ¶ 96). The Commission contends that even though Kolb's substantial

assistance was "inactive," the Complaint still states a claim. The Commission cites the Second Circuit's statement in *Turtur:* "inaction can create aider and abett[o]r liability ... where there is a conscious or reckless violation of an independent duty to act." 892 F.2d at 207 (citing *IIT,* 619 F.2d at 927).

In *Turtur,* the Court quoted its statement from *IIT* as follows:

"'Apart from a case like [*Brennan v. Midwestern United Life Ins. Co.,* 417 F.2d 147 (7th Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970)], inaction can create aider and abettor liability only where there is a conscious or reckless violation of an independent duty to act.' [*IIT,*] 619 F.2d at 927. *Brennan* involved a corporation that refrained from reporting to regulatory authorities its knowledge that a broker was manipulating its stock, 'which had the effect of increasing the value of [the corporation's] over-the-counter stock, to the benefit of [the corporation's] efforts to accomplish a merger with another company.' 619 F.2d at 926."

892 F.2d at 207. The Court went on to explain that it "viewed *Brennan* as posing an exception to the general rule because of the offending corporation's 'conscious and specific motivation for not acting.'" 892 F.2d at 207 (quoting *IIT,* 619 F.2d at 927). The Court stated that in order to prevent the exception from swallowing the rule, "inaction can provide a basis for liability, in the absence of a duty to act, only when 'designed intentionally to aid the primary fraud.'" 892 F.2d at 207 (quoting *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983)).

Kolb argues that since he was not subject to an independent duty to act, as a public customer of Moore & Schley, he owed no fiduciary duty to anyone. In the instant case, however, the Complaint alleges specific knowledge of Kolb that his accounts were undermargined. He therefore allegedly knew that his accounts were being operated in violation of the securities laws. Further, it is alleged that Kolb prof-ited nicely from the transactions in his accounts and that he paid Militano a kickback. Unlike the passive investors in *Turtur,* Kolb allegedly had sufficient knowledge of the illegal transactions and chose neither to stop them nor to alert anyone to them. His motivation for this inaction, it is contended, is pure greed. (Complaint ¶¶ 92, 100). *See* Commission Mem. in Opp. at 4.

Kolb argues that the Commission has failed to allege that his actions/inactions were a proximate cause of the primary violations. *Edwards & Hanly v. Wells Fargo Secs. Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Unlike the Commission's allegations against the other defendants, Kolb argues, its allegations against him fail to allege the requisite "but for" causation. He argues that the market manipulation perpetrated by Militano and Sonneberg "would still have occurred even if Kolb had not maintained two accounts over which Militano had discretion." (Def.'s Mem. at 25).

The Commission argues, however, that an aider and abettor's action can still be a proximate cause of a violation even though others might have filled the aider and abettor's role. *IIT,* 619 F.2d at 916. The Commission has alleged that Kolb's assistance "facilitated the commission" of the Chase Medical manipulation. *Brennan,* 417 F.2d at 154. The Court finds that such allegations fulfill the pleading requirements for the element of causation.

**C. Rule 9(b)**

Kolb argues that the "willfully causes" element of Regulation X is tantamount to fraud, and that the SEC has failed to meet the particularity requirements of Fed. R.Civ.P. 9(b) in that it is not alleged that Kolb made any misrepresentations to anyone. Further, the Complaint fails to allege intent or knowledge of "either the margin rules and regulations—or of any benefit that [Kolb] could gain if those rules and regulations were not applied to his account." (Def.'s Mem. at 12).

The Second Circuit recently stated that the "purpose of Rule 9(b) is three-fold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 675 (2d Cir.1991) (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987)). The Court stated that although knowledge may be averred generally, plaintiffs must 'plead the factual basis which gives rise to a "strong inference" of fraudulent intent.' " *O'Brien*, 936 F.2d at 676 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990); citing *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir.1987); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). The Court strongly advised plaintiffs that past decisions concerning Rule 9(b) should not be " 'mistaken for license to base claims of fraud on speculation and conclusory allegations.' [Rather] [a]n ample factual basis must be supplied to support the charges." 936 F.2d at 676 (quoting *Wexner*, 902 F.2d at 172).

The Commission contends that Kolb cannot argue that he has not been given "fair notice" of the claims against him. The Commission summarizes its claims as follows. Kolb allegedly violated Section 7(f) of the Exchange Act and Regulation X thereunder through purchases and sales in Kolb's accounts during August through December 1988, when the accounts had insufficient equity to support the transactions. Kolb allegedly knew that he had insufficient funds to pay for securities purchases. (Complaint ¶ 92). Withdrawals from Kolb's margin accounts of $6,000 on September 29, 1988 and $35,000 on December 2, 1988, when the accounts were undermargined, violated Section 7(f) of the Exchange Act and Regulation X in that Kolb willfully caused credit to be extended in contravention of Regulation T. (Complaint ¶¶ 149–152).

Further, Kolb allegedly aided and abetted Militano's securities laws violations by opening margin accounts (Complaint ¶ 92); purchasing and selling 203,000 Chase Medical common shares during August through December 1988 with Militano's assistance (Complaint ¶ 95); accepting Militano's purchases even though Kolb knew he did not have funds to pay for them (Complaint ¶ 92); generating profits of $56,603.51 on Chase Medical trades and kicked back $5,000 to Militano (Complaint ¶ 96); knowing that defendant Carl Varrone was also trading Chase Medical with Militano and sharing profits with Militano (Complaint ¶ 97); and knowingly giving false responses about activity in his account to the Commission in January 1989 (Complaint ¶ 98).

The Court finds that the Commission's allegations more than meet the pleading requirements of Rule 9(b). Kolb is alleged to have reaped profits of almost $51,000 over a four month period in accounts that were clearly undermargined, and he allegedly paid a kickback to Militano. The Commission has successfully alleged facts to provide a "strong inference" that Kolb committed fraud.

*Conclusion*

Defendant Kolb's motion to dismiss the Complaint against him is denied. The parties are to proceed with discovery and are to appear for a status conference in Courtroom 228 at 10:00 A.M. on December 2, 1991.

SO ORDERED.