22-530-cv
*Doe v. EviCore Healthcare MSI, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of February, two thousand twenty-three.

PRESENT:
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

_____

Jane Doe 1, Jane Doe 2, SW Challenger, LLC,

> *Plaintiffs-Appellants*,

ABC, State of Tennessee, State of Florida,
State of Texas, State of New Jersey,
State of Illinois, State of North Carolina,
State of Connecticut, State of Louisiana,
State of New York, State of New Mexico,
State of Alaska, State of Oklahoma,
State of Montana, State of California,
State of Michigan, State of Washington,
United States of America ex rel. SW
CHALLENGER, LLC,

> *Plaintiffs*,

v.                                                                          22-530-cv

EviCore Healthcare MSI, LLC,

        *Defendant-Appellee,*

DEF, WellCare Health Plans Inc.,

        *Defendants.*

_____

<table>
<tr><td>FOR PLAINTIFFS-APPELLANTS:</td><td>DAVID S. STONE (Stephen A. Weiss, Christopher Ayers, Diogenes P. Kekatos, Seeger Weiss LLP, Ridgefield Park, NJ, *on the brief*), Stone & Magnanini LLP, Berkeley Heights, NJ.</td></tr>
<tr><td>FOR DEFENDANT-APPELLEE:</td><td>BRIAN P. DUNPHY (Emily Kanstroom Musgrave, *on the brief*), Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, MA.</td></tr>
</table>

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Jane Doe 1, Jane Doe 2, and SW Challenger, LLC (collectively, "Relators"), on behalf of the United States and sixteen individual states, appeal from the district court's judgment dismissing their health care fraud-related qui tam action against defendant-appellee eviCore Healthcare MSI, LLC ("eviCore"). *United States ex rel. SW Challenger, LLC v. EviCore Healthcare MSI, LLC*, No. 19-cv-2501, 2021 WL 3620427 (S.D.N.Y. Aug. 13, 2021). Although Relators brought twenty-two causes of action in their Second Amended Complaint ("SAC"), they challenge on appeal only the dismissal of their claims under the False Claims Act

("FCA"), 31 U.S.C. §§ 3729–33.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

The SAC alleged that eviCore contracted with private health insurance companies that cover Medicare and Medicaid beneficiaries to provide reimbursement determinations for medical services. Plaintiffs Jane Doe 1 and Jane Doe 2 were both former employees at eviCore, where they primarily reviewed physical therapy and occupational therapy treatment requests. The allegations in the SAC are based on Relators' "personal knowledge" and "their own personal investigation." App'x at 144 ¶ 48.

The gravamen of the SAC is that eviCore employed "a variety of interlocking schemes designed to ensure . . . high rates of approval" for the procedures that were requested by medical professionals, rather than providing the individualized medical necessity review that the regulatory regime requires.[2] *Id.* at 156 ¶ 98; *see also id.* (alleging "100% approvals for certain types of requests"). The SAC alleged two general types of fraudulent conduct. First, the SAC asserted that eviCore's systems, which required the clinical reviewers to input certain patient information into a database, would direct those reviewers to "'auto-approve' all requests relating to certain

---

[1] Relators were granted leave to file a third amended complaint to correct the pleading defects identified by the district court in its decision, *SW Challenger, LLC*, 2021 WL 3620427, at *13, but Relators declined that opportunity and requested and obtained a final judgment from the district court in order to file this appeal.

[2] During the period when the first amended complaint was filed under seal, the federal government and the state plaintiffs declined to intervene in the action. After eviCore moved to dismiss the SAC, the federal government filed a Statement of Interest taking "no position on the overall merit of eviCore's motion to dismiss" but arguing that eviCore had advanced an "unduly narrow view" of the FCA. Statement of Interest of the United States of America at 2, *United States ex rel. SW Challenger LLC v. EviCore Healthcare MSI, LLC*, No. 19-cv-2501 (S.D.N.Y. Mar. 1, 2021), ECF No. 39.

providers, therapies, and populations" and, in doing so, "to ignore acceptable standards of clinical practice, evidence-based decision making, and [reviewers'] own clinical judgment." App'x at 156–57 ¶ 99. Second, the SAC asserted that eviCore deployed artificial intelligence systems to approve certain requests based on flawed criteria and without manual review. Relators asserted that, as a result, eviCore provided worthless services to the insurance companies it contracted with, or at least failed to provide the medical necessity review services that insurance companies contracted it to perform, and caused those insurance companies to bill the government for unnecessary and fraudulently approved medical services.

The district court granted eviCore's motion to dismiss on two independent grounds. First, the district court held that Relators failed to allege falsity as required under the FCA "because the services eviCore provided were not so worthless that they were the equivalent of no performance at all." *SW Challenger, LLC*, 2021 WL 3620427, at *9 (internal quotation marks and citation omitted). Second, the district court determined that Relators failed to plead their claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). *Id.* at *9–*11. Relators appealed.

We review *de novo* the dismissal of a complaint pursuant to Rule 9(b), "accept[ing] as true the facts alleged in the complaint." *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 83 (2d Cir. 1999). As set forth below, we agree with the district court that allegations in the SAC failed to meet the pleading requirements of Rule 9(b).[3]

The FCA imposes liability on "any person who . . . knowingly presents, or causes to be

---

[3] In light of our affirmance of the dismissal under Rule 9(b), we do not reach the issues of whether (1) Relators adequately alleged that eviCore provided worthless services within the meaning of the FCA, or (2) the district court erred "by collapsing [Relators'] FCA claims into the judicially-created category of 'worthless services.'" Appellants' Br. at 39; *see also id.* at 33.

4

presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Claims under the FCA are subject to Rule 9(b), *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (*Chorches*), which requires a complaint to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). Under Rule 9(b), the party alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Chorches*, 865 F.3d at 81 (internal quotation marks and citation omitted); *see also United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) ("The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991))). Moreover, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (quoting *Beck v. Mfrs. Hanover Tr. Co.*, 820 F.2d 46, 50 (2d Cir. 1987)). "Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Id.* We have emphasized, however, that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* Instead, "[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.*

We conclude that the district court correctly determined that Relators neither pled fraud with sufficient particularity, nor alleged facts to support a strong inference of fraud, to satisfy the Rule 9(b) standard. At the outset, as the district court determined, the SAC failed to identify even a single instance of a medical procedure, involving any particular patient on a specific date, that was fraudulent or unnecessary but that was nevertheless approved by eviCore.[4] *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (finding allegation that failed "to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations" deficient under Rule 9(b)). Instead, Relators more generally asserted that the volume of eviCore's approvals made it inevitable that fraudulent claims were approved. *See* App'x at 136 ¶ 16 ("If eviCore failed to provide utilization management services . . . that *could* result in patient harm and cost the Government a significant amount of taxpayer money." (emphasis added)).[5] Such speculative allegations are insufficient to satisfy Rule 9(b). *See Wexner*, 902 F.2d at 173 (affirming dismissal for failure to satisfy Rule 9(b) because purported fraud claim "cannot be based on allegations which are themselves speculative").

The SAC's allegations that eviCore breached its contracts with the private insurance companies were similarly deficient. The SAC did not identify any specific contracts that governed

---

[4] The only specific medical request even mentioned in the SAC is an email from an eviCore manager that "referenced" a case where "a Clinical Reviewer had 'to auto approve 200 visits for an ankle sprain,'" but Relators did not allege that the visits were fraudulently requested. App'x at 159 ¶ 111. Moreover, Relators did not provide details such as the patient's name, the date or circumstances of the request, or any of the underlying documentation related to the request.

[5] To the extent that Relators question the use of an automated approval process for certain requests for services, as opposed to the performance of individualized manual reviews, the use of an automated system in this context does not necessarily suggest fraud. In fact, as Relators acknowledge, a Centers for Medicare & Medicaid Services manual even "encourage[s]" contractors to "automate" the medical review process. Ctrs. for Medicare & Medicaid Servs., Medicare Program Integrity Manual § 1.3.7 (Revised Sept. 30, 2021), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/pim83c01.pdf.

those relationships during the period relevant to the allegations or any specific provisions that eviCore breached. Instead, the SAC only vaguely asserted that eviCore "agreed to fulfill the role the [private insurance companies] had in ensuring medically necessary treatments were approved and non-medically necessary treatments were denied." App'x at 137 ¶ 17. In any event, "[c]ontractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (affirming dismissal of fraud claims under Rules 12(b)(6) and 9(b)).

Relators' argument that their allegations created a strong inference of fraud is unpersuasive. Although Relators argue that the district court erroneously applied our decision in *Chorches*, under which a party may plead "based on information and belief when facts are peculiarly within the opposing party's knowledge," 865 F.3d at 81–82 (internal quotation marks and citation omitted), we disagree. In *Chorches*, the plaintiff alleged that an ambulance company had perpetrated a scheme of falsifying trip records to obtain fraudulent reimbursements from the government for ineligible ambulance trips. *Id.* at 83. In particular, we emphasized that the complaint described specific incidents in which the plaintiff was instructed to falsify certain records. *Id.* at 83–84 ("In addition to alleging that [the company] falsified [reports] on a daily basis, and identifying the types of patients whose [reports] were routinely falsified, the [complaint] details many specific [incidents]—providing information such as the date, patient name, and original reason for the transport—for which [plaintiff] was told to alter a [report] with false or misleading information."). By contrast, the communications contained in the internal eviCore documents that Relators reference in the SAC fall far short of the allegations that we have found to raise a strong inference of fraud. *See id.* at 83–86. Even accepting as true from Relators' supporting documentation that

7

eviCore approved entire categories of requests, Relators do not allege that any one of those requests was itself fraudulent—or ultimately resulted in the government paying for an unnecessary medical service. Although our precedents do not require that a False Claims Act relator always provide "exact billing numbers, dates, or amounts for claims submitted to the government," *id.* at 82, we agree with the district court that "the allegations here are confused and contradictory" and "[a]t best, the SAC alleges a discrete and haphazard set of auto-approval processes that existed at 'various times' for 'certain categories' of requests" that fail to support the requisite strong inference of fraud. *SW Challenger, LLC*, 2021 WL 3620427, at *10 (citation omitted).

\* \* \*

We have considered Relators' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8