James THORNTON and Samuel Grochow
on behalf of themselves and all others
similarly situated, Plaintiffs,

v.

MICROGRAFX, INC., J. Paul Grayson,
George D. Grayson, and Stephen J.
Gaal, Defendants.

No. 3:91–CV–2608–X.

United States District Court,
N.D. Texas,
Dallas Division.

March 10, 1995.

Wilmer Dallam Masterson, III, Theodore Carl Anderson, William G. Shaw, Kilgore & Kilgore, Dallas, TX, Jeffrey H. Squire, Peter S. Linden, Kaufman Malchman Kaufman & Kirby, New York City, Erin K. Flory, Betts Patterson & Mines, Seattle, WA, Steve William Berman, Hagens & Berman, Seattle, WA, for James Thornton, Samuel Grochow.

Dennis J. Block, Richard W. Slack, Laura J. Shaw, Weil Gotshal & Manges, New York City, Ralph I. Miller, Stephen Cormac Carlin, Debra Lee Goldstein, Weil Gotshal & Manges, Nicholas Andrew Foley, Bush Craddock Huffsmith & Gilhooly, Dallas, TX, for Micrografx, Inc., J. Paul Grayson, Stephen J. Gaal.

Laura J. Shaw, Weil Gotshal & Manges, New York City, Ralph I. Miller, Stephen Cormac Carlin, Debra Lee Goldstein, Weil Gotshal & Manges, Nicholas Andrew Foley, Bush Craddock Huffsmith & Gilhooly, Dallas, TX, for George D. Grayson.

## MEMORANDUM ORDER AND OPINION

KENDALL, District Judge.

Before the Court are Defendants' Amended Motion to Dismiss, filed January 13, 1992; Plaintiffs' Memorandum in Opposition, filed February 13, 1992; Defendants' Reply Brief, filed March 6, 1992; and supplemental briefing filed by Plaintiffs and Defendants on December 31, 1992. For the reasons set forth below, the Court concludes that the Plaintiffs have failed to state a claim of securities fraud against the Defendants for which relief can be granted, so that all of Plaintiffs' federal claims are hereby DISMISSED. In addition, Plaintiffs' state law claims are DISMISSED for want of jurisdiction.

## BACKGROUND

This lawsuit was brought by Plaintiff purchasers of common stock of Defendant Micrografx, Inc. who acquired the stock during the time period from February 8, 1991 through June 25, 1991 (the "Class Period"). Micrografx is a software development, marketing and production company. It produces graphics and presentation applications and systems software products for use with IBM and IBM-compatible personal computers utilizing the Microsoft Windows and OS/2 Presentation Manager operating environment. Am.Compl. ¶ 7. Micrografx's product line includes Graphplus/Charisma, Micrografx Draw Plus, Micrografx Designer, ClipArt, XPort, and TeleGrafx. Am.Compl. ¶ 32. As an innovator in Windows applications software, Micrografx experienced explosive growth in the late 1980s and early 1990s. On June 29, 1990, Micrografx made an initial public offering of 1,329,809 shares of common stock for sale at the price of $16 per share. Am.Compl. ¶ 33. The stock was enthusiastically received by investors, and within 30 days, the stock was trading at $25 per share. Am.Compl. ¶ 35.

Micrografx was founded by individual Defendants J. Paul Grayson and his brother George D. Grayson as a partnership in 1982 and was incorporated in 1984. Paul Grayson is Chairman and Chief Executive Officer of Micrografx. Am.Compl. ¶ 9. George Grayson is Chief Operating Officer and President of Micrografx. Am.Compl. ¶ 10. Both Graysons, along with individual Defendant Stephen J. Gaal, are on the Board of Directors. Am.Compl. ¶¶ 9–11.

The Plaintiffs bring various causes of action against the Defendants including violations of Sections 10(b), 20(a) and 20A(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), 78t–1, and Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b–5, as well as state law claims for common law fraud and

deceit and negligent misrepresentation. In essence, Plaintiffs assert that the Defendants made optimistic statements in press releases, interviews, and communications with securities analysts concerning Micrografx's anticipated sales and earnings for the first quarter of fiscal 1992 (April 1, 1991 to June 30, 1991) and failed to disclose negative information such as higher expenses, decreasing margins, and the existence of increased competition in order to artificially inflate the price of Micrografx stock. Plaintiffs also allege that the individual Defendants engaged in insider trading during the Class Period by selling shares of Micrografx stock at prices that had been artificially inflated because of their misrepresentations. Am.Compl. ¶ 1.

Defendants move to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity, Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief can be granted. Defendants also move to dismiss Plaintiffs' state law claims for lack of pendent jurisdiction.

### DISCUSSION

As a threshold matter, this case was originally filed in the Southern District of New York and was transferred to the Northern District of Texas. As a condition of transferring the case from New York to Texas, Judge Stanton ordered that the pending motion to dismiss, subsequently amended and now before this Court, be decided under the law of the Second Circuit. In accordance with the parties' reasonable expectations, the law of the Second Circuit shall be applied in this case. The Court notes, however, that the securities law applicable to the motion to dismiss is substantially similar in the Second and Fifth Circuits, so that the result would be the same regardless of which law the Court would apply.

A complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering a motion to dis-miss, the Court must accept all factual allegations in the complaint as true. *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). Mere conclusory allegations are insufficient to state a cause of action. *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971).

The Court excludes from consideration matters presented outside the pleadings, so that the Defendants' motion remains a motion to dismiss, and is not converted to a motion for summary judgment. Fed. R.Civ.P. 12(b). The complaint is deemed to include any document attached to it as an exhibit or any document incorporated in it by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985). When a plaintiff quotes from a document used as a foundation for allegations in the complaint, the Court may examine the entire document to review a motion to dismiss. *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (1990). In addition, the Court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC. Fed.R.Evid. 201(b)(2); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991).

**Securities Fraud Claims**

 Section 10(b) prohibits a person from using or employing any "manipulative or deceptive device" in connection with the sale of a security. Rule 10b–5 prohibits the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *I. Meyer Pincus & Assoc.* at 761. To state a federal securities fraud cause of action under § 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused plaintiff injury. *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 264 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128

L.Ed.2d 70 (1994). Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976).

■ Securities fraud allegations are subject to the pleading requirements of Fed. R.Civ.P. 9(b),[1] and the complaint must (1) specify the statements the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993). Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991).

■ Plaintiffs' Amended Complaint is based upon information and belief as to the actions of the Defendants. Although allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge, a plaintiff does not have license to base claims of fraud on speculation and conclusory allegations. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990). Where pleading is permitted on information and belief, the complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard. *Id.*

■ Plaintiffs allege that during the Class Period (February 8, 1991 through June 25, 1991) the Defendants made optimistic statements concerning Micrografx's anticipated sales and earnings for the first quarter of fiscal 1992 (April 1, 1991 to June 30, 1991) which were false and materially misleading. Plaintiffs allege that Defendants also failed to disclose material negative information such as higher expenses, decreasing margins, and the existence of increased competition, in order to artificially inflate the price of Micrografx stock. Plaintiffs allege that the indi-

vidual Defendants engaged in insider trading during the Class Period by selling shares of Micrografx stock at prices that had been artificially inflated because of their misrepresentations.

An analysis of the Amended Complaint reveals Plaintiffs' theory of this case:

> Micrografx' stock price declined between February and June of 1991. The Individual Defendants sold stock during this time. Therefore, there must have been fraud.

The Court concludes that Plaintiffs' Amended Complaint fails to meet the stringent pleading requirements of Rule 9(b) as explained in *O'Brien.* The Amended Complaint fails to put the Defendants on notice, places the Defendants' reputations at risk, and burdens the courts with a potential strike suit. Plaintiffs' pleadings offer nothing more than "fraud by hindsight."

Plaintiffs, devote several pages of the Amended Complaint to the "role and duty of the Individual Defendants," paragraphs 16–21, in which Plaintiffs explain that Micrografx's CEO, president, and directors controlled the contents of the company's financial reports and SEC filings, made many major decisions for the company, and spoke frequently with market analysts and investors. Plaintiffs declare that many of the individual Defendants' statements (to analysts, in financial reports, and to the press) "were issued to the market for the purpose of influencing and inflating the price of Micrografx stock." Plaintiffs contend that:

> By virtue of their positions with Micrografx, the Individual Defendants, knew or were reckless in failing to know the adverse non-public information about the financial condition, operations and business prospects of Micrografx as alleged herein and misrepresented material facts, conspired to misrepresent, recklessly permitted the misrepresentation of such facts or acted to conceal material information from Plaintiffs ...

Am.Compl. ¶ 20.

Continuing this theme, Plaintiffs then provide sixteen pages entitled "Factual Allega-

---

**1.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

tions" which are characterized by rote repetition of buzzwords taken from the pertinent statutes and rules as well as the Plaintiffs' conclusory allegations. For example, Plaintiffs emphasize the Graysons' contacts with securities analysts and proclaim that:

> the analysts gave Micrografx the opportunity to review and comment upon their analysts' reports (including earnings and revenues projections contained therein) prior to their issuance. By virtue of these reviews and concomitant "guidance," Micrografx adopted or acquiesced in projections, estimates and statements disseminated by these analysts.

Am.Compl. ¶ 38. This unsupported conclusion is an impermissible attempt to impute the opinions of stock market analysts to the Defendants.[2] Numerous pages of the Amended Complaint address articles and opinions by stock market analysts of Micrografx's performance, none of which purport to quote the Defendants directly or to quote some unnamed source at Micrografx. Two of the highlighted articles, written before the Class Period, review the company's success and are not alleged to be misleading.

The event that triggers the Class Period is an article quoting Paul Grayson in the "Stock of the Week" column in *Investor's Daily* dated February 8, 1991. The statements attributed to Grayson, showing the allegedly misleading statements cited by Plaintiffs in italics, are:

> Grayson says that he *is comfortable with Wall Street estimates of 35% to 40% revenue growth this year....* And he *wouldn't be surprised by even better performance. The economic slowdown has not been felt at the company,* he says.
>
> \* \* \* \* \* \*
>
> [Software program Picture Publisher] "will fit in well with our current products, and we'll be able to sell it to current customers,

as well as leverage that technology in future products," Grayson said.

\* \* \* \* \* \*

Grayson acknowledges that some potential customers have put off purchasing his programs until Software Publishing and Lotus show their hands. But *his company's five-year lead on designing Windows products gives him an edge,* he believes. *"Frankly,"* he says, *"I can't wait to get in the ring with them."*

Am.Compl. ¶¶ 45–47; Sean Silverthorne, *Micrografx Exploits Windows of Opportunity,* Investor's Daily, Feb. 8, 1990, at 1. On the day this article was published, Micrografx stock closed at $28 per share. During the following day, the stock traded at $32 per share. Am.Compl. ¶ 48.

The Court observes that Grayson's statement on February 8, 1991 that he is comfortable with stock market analysts' estimate of 35% to 40% of revenue growth "this year" was made five weeks into a fifty-two week year. Plaintiffs' lawsuit crying fraud and relying on this statement by Grayson to trigger the Class Period was filed on August 21, 1991, *more than four months before the end of 1991.* Plaintiffs apparently relied on their psychic talents to foresee that Micrografx's revenue growth for 1991 couldn't meet this projection so that Grayson's statement back in February must have been fraudulent and misleading. Federal securities law demands truth, not clairvoyance. Plaintiffs have failed to provide any facts to show that the statement was fraudulent when made. Plaintiffs also somehow omitted from their Amended Complaint Grayson's statement acknowledging the effect of competition upon Micrografx's sales, only trumpeting as fraudulent his statement that he "can't wait to get into the ring" with the competition.

Plaintiffs present other allegedly misleading statements by the Defendants during the Class Period.[3] On February 21, 1991, Micro-

---

**2.** *See Milberg v. Western Pacific R.R.Co.,* 51 F.R.D. 280, 282 (S.D.N.Y.1970) (corporations are not required to read every article printed about them and will not be held liable for securities fraud for all inaccuracies therein), *appeal dismissed,* 443 F.2d 1301 (2d Cir.1971).

**3.** Plaintiffs persist in attempting to hold the Defendants liable for the opinions of stock market analysts in paragraphs 53, 55, 56, and 58. Unlike the statements of unnamed company spokesmen held unattributable to the defendants with the degree of particularity required by Rule 9(b) in *Hershfang v. Citicorp.,* 767 F.Supp. 1251, 1256 (S.D.N.Y.1991), the analyst opinions cited by the

grafx announced its acquisition of another software company, Astral Development Corporation, at which time Paul Grayson noted that "as the Windows momentum continues, Micrografx is focused on offering the strongest line of Windows' graphics tools in the industry." Am.Compl. ¶¶ 50–51. In a press release dated March 11, 1991 announcing the hiring of new chief financial officer David Henkel, Grayson represented that Henkel "possesses the experience in both financial matters and high technology that are required at a rapidly growing company such as Micrografx. The addition ... positions us to handle our growth smoothly for the next several years." Am.Compl. ¶ 54. The Court fails to recognize anything nefarious in these statements, and Plaintiffs do not enlighten the Court as to what precisely is misleading about them.

Plaintiffs next offer a press release dated May 13, 1991 in which Micrografx announced its financial results for fourth quarter and fiscal year 1991. Am.Compl. ¶ 59. The press release quotes Paul Grayson as stating that "[o]ur record fiscal 1991 financial performance reflects continued momentum in sales of the Designers, Charisma, Draw Plus and systems software." He also "expects growth to continue in 1991 as Micrografx continues as a technology leader in the kind of computer graphics used in products like International Business Machine Corp.'s OS–2 operating system and Microsoft Corp.'s Windows 3.0 program ..." Am.Compl. ¶ 60.

Plaintiffs set forth the alleged deficiencies in this press release as follows:

> In the May 13 press release neither Grayson, nor any other company representative, gave any indication that earnings for the next quarter might be flat, that the company was losing sales momentum at a higher rate than ever previously experienced due to the impact of competition, that increased sales and marketing expenses were necessary to offset competition which in turn was likely to depress margins, and that unless major new but unlaunched releases of Charisma and Designer were successful and overcame these negative factors, it was unlikely that any

increase in earnings for the next few quarters could be achieved.

Plaintiffs contend that these problems "were known to the Defendants (or recklessly ignored)." Am.Compl. ¶ 61. Again, Plaintiffs have not provided any *facts* to support their *conclusion* that the Defendants "knew" or "recklessly ignored" these problems, or that the May press release was fraudulent when issued.

The final allegedly fraudulent statement made during the Class Period was "reported in the financial press" on June 10, 1991. Plaintiffs do not identify the publication or the author of the article. As in the excerpt discussed above, Plaintiffs selectively pull statements out of context to support their position (designated below in italics), when the statement in context leaves the reader with a very different impression.

> Also of concern to followers of the company, Grayson notes, has been a recent rash of competing products from such industry heavyweights as IBM and Lotus. "I think analysts have been worried that so many people are coming after us," he confides. But *Micrografx has been ramping up a new product cycle, Grayson reports, and he is "comfortable with forecasts of a 35% growth in the revenues and earnings of $1.10 a share in the current fiscal year, ending March 1992. We're much more profitable than we've ever been, and we're very optimistic about the rest of the year."*

Am.Compl. ¶ 65.

Plaintiffs' criticism of this statement is that "Grayson made no disclosure of facts likely to indicate a material change in Micrografx's previously touted strong earnings momentum," specifically, that earnings were likely to be flat, sales and marketing expenses had increased, sales of Charisma were below plan, and the company was experiencing lower margin sales. Am.Compl. ¶ 66. The Court concludes that if anyone is being misleading, it is the Plaintiffs. Plaintiffs apparently attempted to conceal from the Court the fact that Grayson's statement confronted the situation of increasing competition head on (which is a fact likely to indicate a materi-

---

Plaintiffs in this case do not purport to quote anyone with Micrografx.

al change in Micrografx's earnings), the very thing that Plaintiffs repeatedly allege that the Defendants failed to address. In addition, Plaintiffs continue to take the Defendants to task for projections that may or may not come true months *after* the Plaintiffs filed their securities fraud complaint.[4] The Court concludes that these allegations are wholly inadequate to provide the requisite factual basis for a securities fraud action as envisioned by Rule 9(b).

Finally, Plaintiffs reveal the collapse of the alleged scheme by the Defendants to artificially inflate Micrografx stock. On June 25, 1991, an unidentified person at Micrografx met with securities analysts in New York, and revealed:

> higher-than-expected launch and promotion expenses for certain products, higher-than-expected marketing and selling expenses which were incurred to offset the impact of increasing competition, delays in shipping new products and upgrades for its top selling applications, decreasing margins, and a significant reduction of demand ·for the Company's products.... Micrografx announced that earnings would likely be between $0.10–$0.15 rather than the $0.19–$0.21 so confidently predicted just months earlier.

Am.Compl. ¶ 69. Micrografx stock closed at $15 per share the day before this meeting, and closed at $13 per share the day after.

The pages in the Amended Complaint devoted to the actual counts of securities fraud incorporate these "factual allegations" while stringing together a lengthy series of premises and conclusory allegations. The Plaintiffs' usual practice is simply to state that the Defendants knowingly did this and recklessly disregarded that.[5] Conspicuously absent are facts indicating that the Defendants' statements were false or materially misleading. As the Second Circuit has recently observed,

"misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of 'alleging fraud by hindsight.'" *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129 (2d Cir. 1994).

■ The cornerstone of Plaintiffs' case, which they maintain demonstrates the necessary scienter, is the fact that the individual Defendants sold Micrografx stock they owned back to the company during the Class Period. Plaintiffs posit that the individual Defendants orchestrated a fraud on the securities market by artificially inflating the price of Micrografx stock so that they could sell their personal stock holdings at a profit. This is a compelling argument until one reviews *what actually happened.*

On February 8, 1991, the first day of the Class Period, Micrografx stock closed at $28 per share. After rising briefly to $32 during the next day, the stock price slid continually during February and March, closing at $17.75 on the last trading day of March 1991.[6] On April 1, 1991, the Graysons each sold 32,500 shares of common stock back to Micrografx at $15.50 per share, Am.Compl. ¶ 57, substantially *below* the current market price of the stock, which closed that day at $17.125 per share. On May 30, 1991, Gaal sold back 66,977 shares to Micrografx at $15.05 per share, substantially *below* the current market price of the stock, which closed that day at $16.25 per share. On May 30 and 31, 1991, the Graysons each sold back 7,000 shares at $16 per share, within the market price close of $16.25 and $15.75 on those days. Am.Compl. ¶ 67. Finally, on June 6, 1991, the Graysons each sold 10,000 shares back to Micrografx at $15 per share, the day's closing price. Am.Compl. ¶ 75.

---

4. Although the Court correctly quotes from the June 10 statement that Grayson is discussing the fiscal year ending in March 1992, the Amended Complaint actually misquotes the date as March 1991. The Court gives the Plaintiffs the benefit of the doubt and concludes that this must have been a typographical error, and not an intentional misstatement.

5. *See In re Urcarco Securities Litigation,* 148 F.R.D. 561, 568 (N.D.Tex.1993), *aff'd sub nom. Melder v. Morris,* 27 F.3d 1097 (5th Cir.1994).

6. If the stock market was bamboozled by the Defendants' allegedly fraudulent optimistic statements, as Plaintiffs would have the Court believe, why did the stock price consistently drop during the Class Period? Plaintiffs offer no explanation for this inconsistency in their theory of the case.

Plaintiffs draw inferences of wrongdoing based upon a nonsensical premise. Why would the Defendants expend so much time and effort to conceal facts and misrepresent information to a host of securities analysts, successfully orchestrating the artificial inflation of Micrografx stock to $32 a share, and then sit back *while the stock slides daily for seven weeks to half that price* to begin enjoying the fruits of their fraud by selling their stock? And when they finally sell their stock, sell it back to Micrografx for $15 to $16 per share, which for the majority of the stock was some ten percent less than the current market price? Plaintiffs' unpersuasive explanation appears to be, "they committed fraud, they just weren't very good at it." The Court refuses to leave its common sense at the courthouse steps, and concludes that the Plaintiffs have failed to make the requisite showing of scienter to support their securities fraud claims.[7]

Although Plaintiffs named outside director Stephen Gaal as a Defendant, presumably because he sold Micrografx stock during the Class Period, Plaintiffs have failed to identify a single allegedly misleading statement made by Gaal, or any other fraudulent activity which may be attributable to him. This fails to satisfy the particularity requirements of Rule 9(b) with respect to Gaal. Where multiple defendants must respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

■ Count II of the Amended Complaint seeks to impose secondary liability upon the individual Defendants as "controlling persons" of Micrografx pursuant to § 20(a) of the Exchange Act. Because Plaintiffs have failed to adequately plead a primary violation of § 10(b), the Court dismisses the claim of secondary liability under § 20(a). *Shields v. Citytrust* at 1132. Plaintiffs' claim in Count III for insider trading pursuant to § 20(A)(a) fails for the same reason. Plaintiffs have failed to adequately plead a primary violation under the Ex-

change Act, and the Court dismisses the insider trading claim as well. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F.3d 697, 704 (2d Cir.1994).

**State Law Claims**

■ As for Plaintiffs' pendent state law claims, the Court notes that the Supreme Court has emphasized that the power of the district court to hear pendent state claims is discretionary. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). District courts are to decide whether to retain jurisdiction in cases where there are pendent state claims, but the underlying federal claims have been dismissed, based on considerations of judicial economy, convenience, fairness, and comity. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 615, 98 L.Ed.2d 720 (1988). In a case in which all federal law claims are eliminated before trial, the balance of factors to be considered will point toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon* at 350 n. 7, 108 S.Ct. at 615 n. 7. Based on these considerations, the court declines to exercise jurisdiction over the pendent state claims remaining in this case.

**CONCLUSION**

For the reasons discussed above, the Court concludes that the Plaintiffs fail to state a claim of securities fraud against the Defendants for which relief can be granted so all of Plaintiffs' federal claims are hereby DISMISSED. In addition, Plaintiffs' state law claims are DISMISSED for want of jurisdiction.

SO ORDERED.

---

7. *See Acito v. Imcera Group, Inc.,* 47 F.3d 47 (2d Cir.1995) (stock sales by company CEO were not

"unusual" and did not give rise to a strong inference of intent to deceive).