Robert COATES, et al., Plaintiffs,

v.

HEARTLAND WIRELESS COMMUNI-
CATIONS, INC., et al., Defendants.

No. Civ.A. 3:98–CV–0452–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 2, 1998.

Roger F. Claxton and Robert J. Hill (argued) of Kilgore & Kilgore, Dallas, TX, for plaintiffs.

Joseph S. Allerhand (argued) of Weil Gotshal & Manges LLP, New York City, Ralph I. Miller, Penny P. Reid, and Robert R. Summerhays of Weil Gotshal & Manges LLP, Dallas, TX, for defendants.

FITZWATER, District Judge.

Defendants' motion to dismiss presents questions concerning changes effected by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified in relevant part at 15 U.S.C. § 78u–4, in pleading claims for relief pursuant to § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Securities and Exchange

Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1998), and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). For the reasons that follow, the court grants defendants' motion, but permits plaintiffs to replead.

## I

Defendant Heartland Wireless Communications, Inc. ("Heartland") develops, owns, and operates wireless cable television systems in the central United States. These systems transmit television signals from a broadcasting tower to an antenna on a subscriber's rooftop. Heartland began operations in 1993 and made its initial public offering of securities in 1994.

Plaintiffs Robert Coates and Management Insights, Inc. purchased 500,400 shares of Heartland common stock during the period December 18, 1996 through February 28, 1997. Plaintiffs allege that from November 14, 1996 through March 20, 1997 Heartland and defendants David E. Webb ("Webb"), L. Allen Wheeler, John R. Bailey, Alvin H. Lane, John A. Sprague, and J.R. Holland, Jr. (the "individual defendants") misstated material facts about Heartland's subscriber base and related accounts receivable. The individual defendants are either Heartland officers, inside directors, or outside directors. Plaintiffs maintain that, in a series of press releases issued between November 14, 1996 and March 20, 1997, Heartland's third quarter 1996 financial statements, and its December 1996 and February 1997 debt offering prospectuses, defendants misstated material facts concerning Heartland's subscriber base and omitted to disclose the need for substantial, material charges and/or write-downs of the subscriber base and related accounts receivable. Plaintiffs principally focus their complaint and briefing, however, on the press releases alone. They allege that in each of these press releases, defendants reported an increasing subscriber base when they knew or should have known that Heartland reflected on its books approximately $5.2 million in doubtful accounts receivable related to its subscriber base. Nevertheless, these press releases contained information such as disappointing third quarter results, dramatic management changes, and below-expectation fourth quarter results. The price of Heartland stock declined from $19 1/8 on November 14, 1996 to $3 13/16 on March 20, 1997. Plaintiffs allege that defendants touted a growing subscriber base when they in fact knew or should have known the subscriber base was overstated.

After the market closed on March 20, 1997, Heartland announced that fourth quarter 1996 results were below market expectations. Defendants also revealed that Heartland was taking several charges totaling $9.1 million, including a $5.2 million charge relating to a bad debt reserve for uncollectible accounts. This charge was based on approximately 33,000 of 240,700 subscribers with past due balances. Plaintiffs allege that defendants knew or should have known by November 14, 1996 of the need to write down the subscriber base and the related accounts receivable, but failed to disclose these facts until March 20, 1997.

Plaintiffs assert that Heartland's common stock fell from $3 13/16 on March 20, 1997 to $2 3/16 on March 21, 1997, a drop of approximately 43%. They also maintain that the stock trades today at approximately $1 per share. Plaintiffs maintain that if they had known the omitted information, they would not have purchased Heartland stock or would not have done so at artificially inflated prices.

## II

Plaintiffs allege claims against all defendants for relief under § 10(b) of the Exchange Act and Rule 10b–5, and against the individual defendants pursuant to § 20(a) of the Exchange Act. Defendants move to dismiss pursuant to Fed.R.Civ.P. (9)(b) and (12)(b)(6) for failure to plead fraud with particularity and for failure to state a claim upon which relief can be granted.

### A

The court may not dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that they can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46,

78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To decide the motion, the court must accept as true the allegations of the complaint and view them in the light most favorable to plaintiffs. *Royal Bank of Canada v. FDIC,* 733 F.Supp. 1091, 1094 (N.D.Tex.1990) (Fitzwater, J.).

 To survive a Rule 12(b)(6) dismissal, plaintiffs must allege facts entitling them to relief for their substantive causes of action. Section 10(b) makes it unlawful for any person

> [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, in relevant part, makes it unlawful for any person, directly or indirectly,

> [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. To establish a securities fraud claim under Rule 10b–5, a plaintiff must show (1) a misstatement or an omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied,[1] and (5) which proximately caused plaintiff's injury. *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir .1994).

Section 20(a) defines controlling person liability. It provides, in pertinent part, that "[e]very person who, directly or indirectly, controls any person liable under any provi-

sion of this chapter ... shall also be liable jointly and severally with and to the same extent as such controlled person...." 15 U.S.C. § 78t(a).

## B

Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be *stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

(Emphasis added).

 Section 10(b) claims sound in fraud. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). A plaintiff's pleadings must therefore satisfy the strict pleading requirements for fraud set forth in Rule 9(b). *See Oppenheimer v. Prudential Secs. Inc.,* 94 F.3d 189, 195 (5th Cir.1996); *Tuchman,* 14 F.3d at 1067. A plaintiff must plead the elements of his Rule 10b–5 claim with particularity. *See Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520–21 (5th Cir.1993).

The pleading-with-particularity requirement is further reinforced in the PSLRA for allegations made on information and belief. The PSLRA provides, in relevant part, that

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall *state with particularity* all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1) (emphasis added). Such particularity is required so that the complaint

---

1. As in this case, if a plaintiff alleges the theory of fraud on the market, he need not prove individual reliance on the misleading statement, but is entitled to the "presumption that he has indirectly relied on the alleged misstatement, by relying on the integrity of the stock price established by the market." *In re Apple Computer Secs. Litig.,* 886 F.2d 1109, 1113–14 (9th Cir.1989); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1120

(5th Cir.1988), *rev'd on other grounds sub nom. Fryar v. Abell,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). Thus plaintiffs have adequately alleged the reliance element in this case. Additionally, positive proof of reliance is not a prerequisite to recovery in a Rule 10b–5 case primarily involving a failure to disclose. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs.

*Tuchman,* 14 F.3d at 1067.

A plaintiff must "plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to 'distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'" *In re Silicon Graphics, Inc. Secs. Litig.,* 970 F.Supp. 746, 752 (N.D.Cal.1997) (citations omitted) (discussing pleading requirements of Rule 9(b)).

A plaintiff "must plead specific facts, not mere conclusory allegations." *Tuchman,* 14 F.3d at 1067 (citation omitted). The court will not accept conclusory allegations and unwarranted deductions as true on a motion to dismiss. *Id.* To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams,* 112 F.3d at 177. Further, the PSLRA requires that a plaintiff who asserts on information and belief that a statement is misleading or fraudulent must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1).

Finally, a plaintiff who asserts a § 10(b) claim must satisfy the PSLRA's requirement for pleading scienter. The PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added).

### III

Defendants contend that this action must be dismissed because plaintiffs impermissibly rely on group pleading.

### A

Plaintiffs allege throughout their complaint that Heartland and/or the individual defendants as a group violated the securities law by failing to disclose material information. *See, e.g.,* Compl. at ¶¶ 6, 7, 9, & 44. Prior to enactment of the PSLRA, courts in the Fifth Circuit held that general allegations that did not state with particularity each defendant's representations did not meet the particularity requirement of Rule 9(b). *See Tuchman v. DSC Communications Corp.,* 818 F.Supp. 971, 977 (N.D.Tex.1993) (Kendall, J.), *aff'd,* 14 F.3d 1061 (5th Cir.1994); *see also Unimobil 84, Inc. v. Spurney,* 797 F.2d 214, 217 (5th Cir.1986).

Plaintiffs do not directly address whether group pleading is permissible. They cite *Zuckerman v. Foxmeyer Health Corp.,* 4 F.Supp.2d 618, 622 (N.D.Tex.1998) (Maloney, J.), however, for the proposition that they are entitled to a presumption that senior executives of a corporate defendant may be held personally liable for misrepresentations contained in a public statement issued for the corporation. This is known as the "group pleading doctrine" or "group-published information" presumption. Under the group pleading doctrine, plaintiffs may rely on a presumption that statements in prospectuses and press releases are the collective work of those individuals with direct involvement in the day-to-day affairs of the company. *Silicon Graphics,* 970 F.Supp. at 759; *see Zuckerman,* 4 F.Supp.2d at 626 n. 4 ("To the extent that Plaintiffs rely on group pleading for general statements or press releases issued by the corporation, the Court finds the complaint sufficient to survive a motion to dismiss.").

The court declines to accept plaintiffs' position. In *Zuckerman* the court relied on *Silicon Graphics. Zuckerman,* 4 F.Supp.2d at 622. *Silicon Graphics,* in turn, cited a pre-PSLRA case that discussed the "group-published information" presumption. *Silicon Graphics,* 970 F.Supp. at 759 (citing *In re GlenFed, Inc. Secs. Litig.,* 60 F.3d 591, 593 (9th Cir.1995)). Neither *Silicon Graphics* nor *Zuckerman* analyzed the effect of the PSLRA on group pleading. This court con-

cludes that the group pleading presumption is inconsistent with the PSLRA's purpose.

The PSLRA codifies a ban against group pleading. First, the PSLRA allows a plaintiff to assert on information and belief that a statement or omission is misleading, provided that the complaint states with particularity all facts on which this belief is formed. 15 U.S.C. § 78u–4(b)(1). Because a plaintiff can plead on the basis of information and belief, he need not rely on group pleading. An information-and-belief pleading can be supported by facts such as the corporate policy in issuing press releases or the individual defendant's position with the company.[2] Considering a plaintiff's ability to plead by information and belief and the PSLRA's policy of protecting reputations, a group pleading presumption is unnecessary.

Second, a plaintiff must state with particularity the facts that give rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). This requirement is fairly interpreted to require that a plaintiff allege facts regarding scienter as to each defendant. So interpreted, § 78u–4(b)(2) is consistent with the PSLRA's policy of protecting defendants from unwarranted fraud claims and strike suits. It is nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that the defendant made the statement or omission.

Any remnant of the group pleading presumption that remained in this circuit before enactment of the PSLRA did not survive it. The court therefore respectively disagrees

with *Zuckerman* to the extent that it holds to the contrary.[3]

### B

■ Plaintiffs fail to plead with particularity the allegations against each of the individual defendants. They do not allege specifically the wrongdoing or scienter of each such defendant. Although defendant Webb made some of the challenged statements, the only mention of the other five individual defendants is to identify their affiliation with Heartland and their address. In their briefing, plaintiffs argue that all of the individual defendants signed the December 1996 debt offering prospectus and the February 1997 debt offering prospectus and thus made material misleading statements. The complaint itself lacks such allegations. Nevertheless, asserting such facts alone will not prevent dismissal. Plaintiffs must properly plead wrongdoing and scienter as to each individual defendant and cannot merely rely on the individuals' positions or committee memberships within the Heartland organization. *See In re Advanta, Corp., Secs. Litig.*, 1998 WL 387595, at *7 (E.D.Pa. July 9, 1998) ("A director, officer, or even the president of a corporation often has superior knowledge and information, but neither the knowledge nor the information invariably attaches to those positions, and plaintiffs have not pointed to specific reports, circulated among defendants, which contained the adverse information defendants are charged with knowing." (citations omitted)).

As in *Tuchman*, the court holds that plaintiffs have failed to meet the Rule 9(b) partic-

---

**2.** For instance, if the alleged misleading statement appears in a press release issued by a company discussing financial performance, a plaintiff could plead on information and belief that the chief financial officer is responsible for making the statement if the plaintiff can plead with specificity why the officer's position directly involves such duties or why a specific corporate policy requires that chief financial officer make such releases.

**3.** At least one other court has followed similar reasoning in a post-PSLRA case. *See Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350 (S.D.Cal.1998) (noting that group pleading is suspect under the PSLRA and stating, "[t]o permit a

judicial presumption as to particularity simply cannot be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant. The group published doctrine permits an inference of wrongdoing not based on defendant's conduct, but solely on defendant's status as an officer or director of a corporation."). The court respectfully disagrees with decisions to the contrary. *See, e.g., In re Miller Indus., Inc. Secs. Litig.*, 12 F.Supp.2d 1323, 1329 (N.D.Ga.1998) (allowing use of group pleading in post-PSLRA case); *In re Stratosphere Corp. Secs. Litig.*, 1 F.Supp.2d 1096, 1108 (D.Nev.1998) (concluding that group pleading survives the PSLRA).

ularity requirement with respect to the individual defendants. *Tuchman*, 818 F.Supp. at 978 (holding that where four of six individual defendants were not mentioned in complaint other than to identify, among other things, their relationship with company, plaintiffs failed to meet Rule 9(b) particularity requirement).

## IV

Defendants contend that plaintiffs have failed to set forth with requisite particularity the basis for their information and belief allegations.

As the court has already noted, the PSLRA mandates that if an allegation regarding a statement or omission is made on information and belief, the complaint must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1).[4] The complaint must also specify each statement alleged to have been misleading and the reason why it is misleading. *Id.*

### A

■ Plaintiffs' complaint is sufficient in part and inadequate in part. The complaint states in the opening paragraph that plaintiffs' allegations are based on information and belief gained through the investigation conducted by counsel, a review of Heartland's public filings, news articles, press releases, and other publicly available representations. Other courts have held that this general statement is insufficient under the PSLRA. *See, e.g., Novak v. Kasaks*, 997 F.Supp. 425, 431 (S.D.N.Y.1998) (holding that single paragraph that asserted that plaintiffs based their information and belief on investigation of SEC filings, analysts' reports, press releases, and discussions with consultants neither provided required facts underlying complaint's allegations, nor directed court to where facts could be found); *Silicon Graphics*, 970 F.Supp. at 763 (indicating that complaint might have to provide names of "confi-

dential informants, employees, competitors, Government employees, members of the media, and others who have provided information leading to the filing of the case" (citation omitted)). The court agrees that such general statements fail to satisfy the PSLRA.

■ The complaint specifically identifies, however, particular statements in several press releases that plaintiffs allege on information and belief to be misleading. Their information and belief as to the misleading nature of the statements is based on the March 20, 1997 press release, in which Heartland announced it was writing off 33,-000 subscribers and related accounts receivable. The court holds that plaintiffs have adequately stated facts supporting their belief that these specific statements in the press releases were misleading.

### B

The PSLRA also requires that plaintiffs specify each statement that they contend is misleading and the reason or reasons why it is misleading. Plaintiffs allege that defendants made several false statements between November 14, 1996 and March 20, 1997. To comply with the PSLRA, they must "state precisely the time, place, and nature of the misleading statements, misrepresentation, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994); *see Silicon Graphics*, 970 F.Supp. at 764. Plaintiffs have met this requirement by identifying the press releases and prospectuses, thus giving defendants sufficient notice. By detailing the purported misleading statements and dates made, plaintiffs have provided defendants notice of exactly which statements are alleged to have been misleading and have met their burden under the PSLRA.

Plaintiffs have satisfactorily pleaded why the statements are false and misleading. *See* 15 U.S.C. § 78u–4(b)(1). They assert that Heartland's subscriber base was much

---

4. Because the particularity requirement for information and belief pleading is an integral part of the Second Circuit's strong inference standard for pleading scienter, the court analyzes this issue below. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812–813 (2d Cir.1996) (concluding

that unsupported allegations of existence of negative internal reports failed to support claims of falsity and scienter); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) (holding that conclusory allegation of leak of confidential information without more failed to create inference of fraudulent intent).

smaller than it had been reporting publicly. Plaintiffs' belief that the statements were misleading is based on "internal accounts receivable reports."

## V

Defendants challenge whether plaintiffs have adequately alleged scienter as to each defendant. Plaintiffs contend that they have satisfied this requirement under both the motive and opportunity test and the conscious behavior/severe recklessness test.

## A

In a § 10(b) action, a plaintiff must allege facts demonstrating scienter. Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst*, 425 U.S. at 193 n. 12, 96 S.Ct. 1375. Before enactment of the PSLRA, the Fifth Circuit followed the Second Circuit's approach that a plaintiff could raise an inference of fraudulent intent (scienter) either (1) by pleading facts that identify circumstances indicating the defendant's conscious or severely reckless behavior, or (2) by pleading facts that allege a defendant's motive and opportunity to commit securities fraud. *Tuchman*, 14 F.3d at 1067–68; *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 269 (2d Cir.1993).[5]

## B

Plaintiffs assert that defendants had four motives to conceal material, negative information regarding the subscriber base and the associated accounts receivable. As the court explains below, these allegations, alone or in combination, fail to give rise to a strong inference that defendants acted with scienter.[6]

## 1

■ Plaintiffs maintain that scienter may be inferred based on a potential sale of Heartland. They allege that defendants were motivated to conceal the overstated subscriber base and accounts receivable to "enable [Heartland] to market itself to a third party as a lucrative acquisition candidate and in the process to enrich themselves and their principals." Compl. at ¶ 7. Plaintiffs do not plead any facts to support the conclusory allegation that defendants were attempting to sell Heartland. This allegation fails to establish motive or an inference of scienter.

Plaintiffs cite *Zuckerman* as authority for establishing motive from a sale of a business. In *Zuckerman* the plaintiffs specifically alleged that two defendants would receive $2.2 million in "termination" payments if their company's subsidiaries were sold. *Zuckerman*, 4 F.Supp.2d at 627. The court held that "[t]he incentive to complete the lucrative sale of a business, and the personal pecuniary benefits associated therewith, can create a strong motive to engage in fraud and, logically, can raise an inference of scienter sufficient to support allegations of fraud." *Id.* The court relied on a combination of factors, not merely the sale of the business, to establish an inference of fraudulent intent. Unlike the present case, in *Zuckerman* the company was sold.

Plaintiffs' reliance on the potential sale of Heartland fails to establish a strong inference of fraudulent intent. First, plaintiffs plead no facts that support the conclusory allegation that defendants were seeking to market Heartland to enrich themselves. Plaintiffs allege on information and belief that Heartland "had been engaged in discussions with a large regional Bell operating company regarding a possible acquisition deal." Compl. at ¶ 8. They fail, however, to comply with the PSLRA, which requires that such an allegation "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Second, plaintiffs do not allege that the individual defendants stood to reap lucrative termination payments, as was the case in *Zuckerman*. *Zuckerman*

---

**5.** The PSLRA mandates that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Post–PSLRA, several courts have interpreted the Act to eliminate the motive and opportunity prong of proving scienter. Because plaintiffs have failed to meet either prong of this test, the court need not decide whether motive and opportunity survives as a basis for establishing scienter.

**6.** Because plaintiffs have not adequately alleged motive, the court need not address opportunity.

concluded that the incentive to complete a lucrative sale of a business, and the associated personal benefits, could raise an inference of scienter. *Zuckerman,* 4 F.Supp.2d at 627. Without specific allegations of personal benefits or a lucrative sale, plaintiffs have failed to raise the "strong inference" that the PSLRA requires.

### 2

Plaintiffs also allege that defendants were motivated to conceal the overstatements because defendants "were engaged in a public exchange offering during the first quarter of 1997 and well knew the consequences (i.e. that the offering would fail) if they disclosed the true adverse material facts prior to the completion of that offer." Compl. at ¶ 7. This unsupported, generalized allegation of motive is insufficient as a matter of law. *See Novak,* 997 F.Supp. at 430 n. 5 (concluding that allegations of motive to "raise capital" were insufficient as a matter of law to allege scienter); *Glickman v. Alexander & Alexander Servs., Inc.,* 1996 WL 88570, at *5 (S.D.N.Y. Feb.29, 1996) (holding that vague allegations of motive, like "desire to raise much needed capital," were too general to satisfy scienter requirement).

The Second Circuit has held that a motive to inflate stock prices to maximize marketability of a public offering is insufficient to establish scienter.

> We do not agree that a company's desire to maintain a high bond or credit rating [so as to maximize the marketability of a debt offering and minimize the interest rate on those securities] qualifies as sufficient motive for fraud in these circumstances, because "[i]f scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 814 (2d Cir.1996) (quoting *Acito v. IMC-ERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir. 1995)). Likewise, the Fifth Circuit has concluded that inflating the price of stock in order to "successfully bring to fruition the [public] offerings" is insufficient to allow for a proper inference of scienter. *Melder v.*

*Morris,* 27 F.3d 1097, 1102 (5th Cir.1994) ("Accepting the plaintiffs' allegation of motive ... would effectively eliminate the state of mind requirement as to all corporate officers and defendants.").

Plaintiffs' allegations of fraudulent intent based on a motive to inflate the stock price to complete successfully two public offerings are insufficient to establish scienter, because these allegations do not set out sufficient facts to permit an inference of fraud.

### 3

Plaintiffs also allege that Heartland was motivated to inflate its stock price by failing to disclose the negative subscriber information, because it "was expanding through acquisitions of other systems and companies and was primarily paying for those acquisitions with [Heartland] common stock." Compl. at ¶ 7. This motive is indistinguishable from an incentive to inflate the stock price to ensure successful public offerings. Plaintiffs have therefore failed to plead a motive to commit fraud.

Plaintiffs do not allege any facts that defendants were acquiring other companies or planning such acquisitions. They have therefore also failed to satisfy the PSLRA requirement that the complaint state with particularity facts giving rise to a strong inference of fraudulent intent.

### 4

Plaintiffs contend that defendants had a motive to commit fraud because defendant Webb "was motivated to engage in the scheme [to conceal the write-down] to prevent, minimize or delay a foreclosure of his brokerage margin account and thereby prevent or minimize the foreclosure of his personal holdings of [Heartland] common stock." Compl. at ¶ 7. Plaintiffs allege that 498,190 shares in Webb's margin account were sold in the first quarter of 1997 to satisfy a margin call. Defendants point out that Webb still owned 1.4 million shares, which equaled approximately 7% of Heartland's outstanding stock.

If plaintiffs' allegations are intended to show motive to conceal the problems with the subscribers so Webb could sell the stock

at a higher price, the assertions fail to establish Webb's scienter. Only unusual insider trading activity during the class period permits an inference of scienter. *In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1117 (9th Cir.1989). Plaintiffs do not plead facts that support the inference that Webb's sale to satisfy a margin call was unusual. The sale was involuntary, in which Webb was probably forced to recognize a loss. And the notion that Webb would engage in fraud and then wait for the stock price to plummet before selling his securities without benefiting from the fraud is a "non-sensical premise." *See Thornton v. Micrografx, Inc.*, 878 F.Supp. 931, 938 (N.D.Tex.1995) (Kendall, J.) (concluding there was no showing of scienter where defendants allegedly committed fraud to artificially inflate the price of their securities, yet waited until price slid downward for seven weeks before "enjoying the fruits of their fraud" by selling their stock). This sale in response to a margin call does not support an inference of motive to inflate the price of Heartland stock.

If plaintiffs' allegations are meant to establish a motive to inflate the price of the stock so as to minimize depreciation of Webb's portfolio, they are still insufficient as a matter of law to establish scienter. *See Melder*, 27 F.3d at 1102 (holding that allegation that defendants engaged in fraud in order to inflate price of company stock to enhance value of their personal holdings and options was insufficient to allow proper inference of scienter); *Salinger v. Projectavision, Inc.*, 934 F.Supp. 1402, 1414 (S.D.N.Y.1996) (holding that allegations that defendants made misrepresentations to maintain high share price to facilitate future raising of capital and to raise value of personal holdings of shares insufficient to establish motive).

■ Additionally, the sale of stock by one company executive does not give rise to a strong inference of the company's fraudulent intent. The fact that the other individual defendants did not sell any of their shares during the relevant period sufficiently under-

mines this motive theory. *San Leandro*, 75 F.3d at 814.

## C

■ Because defendants' motive to commit securities fraud is not readily apparent from the complaint, plaintiffs face a more stringent standard for establishing fraudulent intent: stating with particularity facts giving rise to a strong inference of fraud based on conscious behavior or severe recklessness.[7] *Tuchman*, 14 F.3d at 1069.

■ Plaintiffs allege throughout their complaint that defendants "knew or should have known" of the need to write down the subscriber base and related accounts receivable. They offer no specific facts, however, demonstrating why defendants knew they would have to write off a substantial portion of the subscriber base and receivables. Plaintiffs merely couple neutral statements of fact with conclusory allegations that defendants "knew or should have known" of such facts. *See, e.g.,* Compl. at ¶¶ 34, 36, 39 & 40. It is insufficient to advance general, conclusory allegations, paired with a recitation of neutral facts. *Zeid v. Kimberley*, 930 F.Supp. 431, 434 (N.D.Cal.1996).

Plaintiffs allege on information and belief that defendants knew or should have known that approximately $5.2 million of $7.5 million in accounts receivable was doubtful and past due. Compl. at ¶ 34. They maintain that

> [Heartland's] internal accounts receivable aging reports revealed, or would have revealed, such to defendants and defendants were well aware that industry practice and experience with respect to past due accounts receivable was that there was little or no chance of recovery of a substantial portion of the Company's receivables.

*Id.* Both assertions are inadequate.

■ As to the "internal accounts receivable aging reports," an unsupported general claim of the existence of confidential company reports is insufficient to survive a motion to dismiss. *San Leandro*, 75 F.3d at 812;

---

7. Recklessness requires (1) an extreme departure from the standards of ordinary care, and (2) a danger of misleading buyers or sellers which is either known to the defendants or so obvious that the defendants must have been aware of it. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n. 2 (5th Cir.1996).

see *Silicon Graphics,* 970 F.Supp. at 766–67 (concluding allegations that defendants received "flash reports" and "stop ship" reports were too generic to create strong inference of fraud under PSLRA). Most well-managed corporations generate a variety of reports at regular intervals. *Silicon Graphics,* 970 F.Supp. at 767. Consequently, any company that announces low earnings would be vulnerable to *ipse dixit* claims that the reports exist and that they reflect poor results. *Id.* To establish a strong inference of fraud, plaintiffs must provide more details about the alleged negative internal reports, such as report titles, when they were prepared, who prepared them, to whom they were directed, their content, and the sources from which plaintiffs obtained this information. *Id.* at 767; *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 365 (1st Cir.1994) (holding allegations sufficiently particular to satisfy Rule 9(b) where plaintiffs specifically identified internal reports and public statements underlying their claims, providing names and dates). This requirement is consistent with the PSLRA's information and belief standard, which requires that plaintiffs plead all facts on which their allegations are based. *Silicon Graphics,* 970 F.Supp. at 767. The court holds that this allegation is insufficient to satisfy the PSLRA because of a lack of specificity in identifying the reports.

■ Plaintiffs' allegations that defendants knew or should have known the write-downs were necessary because of industry practice and experience are also inadequate to plead scienter. First, plaintiffs merely allege that there is an industry practice of writing down past due accounts, without specifying the particular facts upon which belief in this practice is formed. They also neglect to identify any source for this alleged practice. They have therefore failed to state with particularity facts giving rise to a strong inference that defendants acted with scienter.

Second, the Fifth Circuit has held that failure to follow Generally Accepted Accounting Principles does not establish scienter. *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1020 (5th Cir.1996); *see Marksman Partners, L.P. v. Chantal Pharm. Corp.,*

927 F.Supp. 1297, 1313–1314 (C.D.Cal.1996) (concluding that violations of accounting principles alone generally will not establish scienter, but improper accounting, in conjunction with other circumstances suggesting fraudulent intent, may). Defendants must know they were releasing false information or be severely reckless in releasing such information. Identifying an industry practice, without more, is insufficient to plead scienter.

Third, plaintiffs allege that defendants knew or should have known of the need to write down a substantial portion of the subscribers and accounts receivable because, in a November 22, 1996 press release, Heartland explained that decreased average revenue per subscriber was caused because *inter alia* Heartland "reduced the channel offering and modified its billing procedures for certain customers (known in the industry as 'soft disconnect' customers)." Compl. at ¶ 35 (emphasis omitted). By this statement, plaintiffs appear to allege that defendants knew or should have known through experience that a material number of subscribers on its books were seriously past due on their bills and that there was a diminished chance of collection. Defendants allegedly violated securities laws by not revealing this information. Compl. at ¶ 36.

To the contrary, this statement demonstrates that Heartland believed at the time of the statement that "a substantial portion of these [soft disconnect] subscribers may choose to return to their previous channel offerings and rates." *Id.* at ¶ 35 (emphasis omitted). This manifestation of Heartland's belief directly refutes plaintiffs' allegation that defendants must have known that Heartland would have to write off these subscribers. Plaintiffs have alleged nothing that indicates that defendants were reckless in holding this belief or knew it to be false.

### D

■ Without sufficiently pleading scienter, plaintiffs' complaint essentially alleges fraud by hindsight. That is, plaintiffs allege that because Heartland announced on March 20, 1997 that it had taken a $5.2 million charge from writing off its subscriber base, defendants must have known earlier that

such a charge and write-down would be required. Plaintiffs may not plead fraud by hindsight. *Acito,* 47 F.3d at 53 ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud."); *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1129 (2d Cir.1994) (affirming dismissal of § 10(b) claim that defendants should have disclosed at earlier time need to take charge and to increase loan loss reserves); *Tuchman,* 14 F.3d at 1069 n. 6 (stating that contrasting two statements made by defendant is insufficient to plead securities fraud). A decision to write off subscribers and related accounts receivable does not make fraudulent management's prior belief that past due customers might return to active status. So long as management held this belief, any alleged omissions regarding the write-off were not material omissions in violation of § 10(b). *Novak,* 997 F.Supp. at 432 ("Plaintiffs ... apparently fault the timing of the markdowns that were made. But disagreement with a company's business judgment does not state a claim under federal securities laws." (footnote omitted)).

## VI

▆▆▆ To prevail on their Rule 10b–5 claim, plaintiffs must prove both actual causation (transaction causation) and proximate causation (loss causation). *In re Miller Indus., Inc. Secs. Litig.,* 12 F.Supp.2d 1323, 1332 (N.D.Ga.1998). To plead transaction causation, a plaintiff can allege that the defendant's misrepresentations or omissions induced him to make the investment. *Id.* To plead loss causation, a plaintiff can allege that he would not have invested had he known the truth, and that the untruth was in some reasonably direct way responsible for the loss. *Id.*

▆▆▆ Defendants move to dismiss on the ground that plaintiffs have not adequately pleaded loss causation. Plaintiffs allege that "[a]s a result of the inflation of the price of [Heartland] common stock during the period of November 14, 1996 through March 20, 1997, which was caused by defendants' mate-

rial misrepresentations and omissions, [they] have suffered substantial damages...." Compl. at ¶ 48. The court concludes that the allegation is sufficient.

On March 20, 1997 defendants announced their fourth quarter and year end results, which revealed the write-off of subscribers and accounts receivable. Heartland stock traded at $3–13/16 that day. On the following trading day, the stock price fell to $2–3/16, a 43% decline. Although plaintiffs may have difficulty proving loss causation from November 14, 1996 through March 20, 1997, they have at a minimum adequately alleged that the price was artificially inflated on March 20, 1997 by asserting that the significant decline in price at record volume on the following day was a result of disclosing the "truth."

Defendants cite *Thornton,* 878 F.Supp. at 937 n. 6, for the proposition that the stock price would not have consistently fallen during the November 14, 1996 through March 20, 1997 period "[i]f the stock market was bamboozled by the defendants' allegedly fraudulent optimistic statements." *Id.* This argument fails to address the fact that plaintiffs allege a tremendous drop in stock price the day after the "truth" was revealed.[8] Plaintiffs may not be able to *prove* that the decline resulted from the announcement of the write-down, but they have adequately pleaded facts that demonstrate loss causation. As the *Zuckerman* court stated:

> Plaintiffs need only allege facts which show that Defendants' omissions and misrepresentations caused the market price of the stock to be artificially inflated, and therefore appear to be a good risk for investment, so that when the truth came out about the company's condition, the stock lost value and Plaintiffs suffered a loss.

*Zuckerman,* 4 F.Supp.2d at 626. Plaintiffs have adequately alleged facts showing that defendants' misrepresentations and omissions caused the price to be artificially inflated, because they allege the price fell 43% after the announcement of the write-downs.

---

8. Further, one explanation for the steadily decreasing price over this period is that each successive Heartland press release contained unfavorable news.

The PSLRA speaks to loss causation, but it provides no guidance concerning how it must be pleaded. The PSLRA states only that "the plaintiff shall have the burden of *proving* that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4) (emphasis added). The court holds that the PSLRA does not alter the standards for pleading loss causation.

## VII

Defendants move to dismiss plaintiffs' claims of "controlling person" liability under § 20(a) of the Exchange Act for Heartland's § 10(b) violation must be dismissed.

Section 20(a) provides, in relevant part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be liable jointly and severally with and to the same extent as such controlled person...." 15 U.S.C. § 78t(a). Without addressing whether plaintiffs have adequately alleged that the individual defendants were controlling persons, the court dismisses the § 20(a) claim for failure adequately to allege a primary violation by Heartland, the "controlled person."

## VIII

Although § 78u–4(b)(3)(A) of the PSLRA states that "[i]n any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met," there is nothing in this language that indicates that district courts are required to dismiss securities fraud claims without first granting leave to amend. Defendants conceded at oral argument that the decision whether to permit plaintiffs to replead is vested in the court's discretion. Because a more carefully drafted complaint might state a claim upon which relief may be granted, the court grants plaintiffs an opportunity to amend their complaint. *See, e.g., Tinsley v. CIR,* 1998 WL 59481, at *4 (N.D.Tex. Feb.9, 1998) (Solis, J.).

They must file the amended complaint within 30 days of the date this opinion is filed.

\* \* \* \* \* \*

Defendants' motion to dismiss is granted. Plaintiffs shall have 30 days from the date this opinion is filed to file an amended complaint that complies with today's decision.

**SO ORDERED.**