**Judy WOOD, on behalf of the United States of America, Plaintiff–Appellant,**

**v.**

**APPLIED RESEARCH ASSOCIATES, INC., Science Applications International Corp., Computer Aided Engineering Associates, Inc., Datasource, Inc., Geostaats, Inc., Gilsanz Murray Steficek, LLP, Hughes Associates, Inc., Ajmai Abbasi, Eduardo Kausel, David Parks, David Sharp, Daniele Venezano, Joseph Van Dyck, Kaspar William, Rolf Jensen & Associates, Inc., Rosenwasser/Grossman Consulting Engineers, P.C., Simpson Gumpertz & Heger, Inc., S.K. Ghosh Associates, Inc., Skidmore Owings & Merrill LLP, Teng & Associates,**

**Inc., Underwriters Laboratories, Inc., Wiss, Janney, Elstner Associates, Inc., and United Airlines, Defendants–Appellees.**

**Boeing, Nustats, American Airlines and Silverstein Properties, Defendants.**

No. 08–3799–cv.

United States Court of Appeals, Second Circuit.

July 16, 2009.

Jerry V. Leaphart, Jerry V. Leaphart & Assocs., P.C., Danbury, CT, for Plaintiff–Appellant.

Patricia B. Gary (David T. Hatem, of counsel), Donovan Hatem LLP, Boston, MA; Gail D. Zirkelbach, Jackson Kelly

PLLC, Denver, CO, for Defendants–Appellees.

PRESENT: ROGER J. MINER, and DEBRA ANN LIVINGSTON, Circuit Judges, DAVID G. TRAGER,* District Judge.

## AMENDED SUMMARY ORDER

Plaintiff–Appellant Dr. Judy Wood ("Wood") appeals from the June 26, 2008 decision of the District Court for the Southern District of New York (Daniels, J.), dismissing Wood's *qui tam* suit under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Wood brings her FCA claims against Defendants–Appellees Applied Research Associates, Inc., et al. (the "Contractor Defendants"), various entities which provided services to the government in connection with the National Institute of Standards and Technology's investigation of the collapse of the World Trade Center. The district court dismissed Wood's claims for (1) want of subject matter jurisdiction under 31 U.S.C. § 3730(e)(4)(A), and (2) failure to state a claim under Fed.R.Civ.P. 12(b)(6) and plead fraud with particularity under Fed.R.Civ.P. 9(b). *See Wood ex rel. United States v. Applied Research Assocs., Inc.*, No. 07–cv–3314, 2008 WL 2566728, at *3 (S.D.N.Y. June 26, 2008). On appeal, Wood challenges both grounds for dismissal. We assume the parties' familiarity with the underlying facts, procedural history, and the issues presented for review.

■ "So long as we are satisfied that we have Article III jurisdiction, we have discretion to decline to resolve difficult jurisdictional questions." *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir.2006). In such a case, we may dispose of a case on the merits while assuming "hypothetical jurisdiction." *See, e.g., Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir.2009) ("[M]indful that the question is one of statutory rather than constitutional jurisdiction, we assume hypothetical jurisdiction over these claims, and we proceed to address the alternative argument for dismissal offered below, namely, that judgment on the pleadings is appropriate as to Conyers's constitutional claims."); *Guaylupo–Moya v. Gonzales*, 423 F.3d 121, 132 n. 10 (2d Cir.2005) ("Because the exhaustion requirement raises a question of statutory, rather than constitutional, jurisdiction, we need not resolve [it] in this case and can dispose of [the petitioner's] argument on its merits."). Because we agree that Wood's claims fall short of the pleading standard required by Fed.R.Civ.P. 9(b), and furthermore, find that the district court did not abuse its discretion in denying Wood leave to amend the Amended Complaint, we decline to reach the question of whether the district court had subject matter jurisdiction under 31 U.S.C. § 3730(e)(4)(A).

## I. Pleading Standards

The Supreme Court has recently articulated the standard applicable to the Contractor Defendants' motions to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability

---

* The Honorable David G. Trager, of the District Court for the Eastern District of New York, sitting by designation.

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted). The "two working principles" underlying this standard are: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1949–50 (quoting Fed.R.Civ.P. 8(a)(2)).

■ Because "[i]t is self-evident that the FCA is an anti-fraud statute" and therefore "claims brought under the FCA fall within the express scope of Rule 9(b)," *Gold v. Morrison–Knudsen Co.,* 68 F.3d 1475, 1476–77 (2d Cir.1995), Wood's Amended Complaint must also meet the heightened pleading standard of Fed R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the pleading requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). As we have explained:

> The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. Thus, although Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent. Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.

*O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) (internal citations omitted). "One of the [further] purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs. [A relator's] contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage." *Madonna v. United States,* 878 F.2d 62, 66 (2d Cir.1989) (internal citation and quotation marks omitted).[1]

---

1. Wood seeks a relaxed pleading standard. She points out that "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge," *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (1990), and then urges that this "is a main factor here and should be dispositive of the issue of particularity." Plaintiff's Br. 43.

But *Wexner* also makes clear that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* In any event, Wood does not assert any facts that are "peculiarly within the

Wood asserts that the Contractor Defendants presented false claims to the United States, and used false records or statements that were material to such claims, as well as financial obligations owed by the Contractor Defendants to the United States, in violation of 31 U.S.C. § 3729. Amended Complaint, ¶¶ 62–70. We have summarized the pertinent provisions of the FCA as follows:

> Under the FCA, the United States, or private citizens acting on its behalf, may sue to recover monies paid to a person who, among other things: "(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729.

*United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 377 F.3d 145, 152 (2d Cir.2004) (ellipsis in original).[2]

■ At the outset, as the district court correctly observed, the Amended Complaint makes no mention of any financial obligation that the Contractor Defendants owed to the government, and moreover, does not specifically reference any false records or statements used to decrease

such an obligation. Thus, Wood's "reverse false claims" action, which is premised on "FCA liability for false statements designed to conceal, reduce, or avoid an obligation to pay money or property to the Government," *id.*, was appropriately dismissed under Fed.R.Civ.P. 9(b).

As for Wood's other claims, i.e., that the Contractor Defendants supplied false claims for payment from the United States, as well as false statements and records material to such claims, the Amended Complaint fails "to specify the time, place, speaker, and . . . even the content of the alleged misrepresentations." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). In short, it "lacks the 'particulars' required by Rule 9(b)." *Id.*

■ Wood generally avers as follows:

These claims are based upon defendants' false claims and false statements made in and pursuant to certain reports, meetings, decision-making procedures, documentation and analysis of various types . . . for which defendants received significant monetary compensation, all the while having . . . knowledge . . . that all such documentation was either false, fraudulent, a sham and/or designed to obfuscate the true and correct state of affairs . . . [T]he National Institute of Standards and Technology [was] mislead by the defendants' fraudulent acts and/or omissions . . .

. . . Instead [of providing consulting and other services that would have enabled NIST to carry out its statutory mandate,] defendants knowingly con-

knowledge" of the Contractor Defendants other than those in the NCSTAR I report, which Wood concedes can be accessed online. Plaintiff's Br. 39 n. 12.

2. In 2009, after Wood's complaint was filed, the various causes of action in 31 U.S.C. § 3729 were reorganized and restated. *See*

Fraud Enforcement and Recovery Act, Pub.L. No. 111–21, 123 Stat. 1621 (2009). While some of these changes are retroactive, they do not change the analysis herein. For ease of presentation, we reference the previous version of 31 U.S.C. § 3729, on which the parties' briefing is predicated.

cealed, or failed to disclose, or caused others to fail to disclose material information in several reports filed in the public domain along with NCSTAR 1 ... all of which purported to satisfy, but intentionally did not satisfy, the mandate that NIST had .... Instead, all such documentation serves soley to mislead, obfuscate and provide a vehicle for the intended fraud; namely, that of steering NIST away from a consideration of what caused the destruction of WTC 1,2; which, as elsewhere elaborated upon, was the use on 9/11/01 of exotic weaponry known as directed energy weapons.

. . . .

... [D]efendants ... committed fraud in seeking to have NCSTAR 1 deceive the public into not recognizing that WTC1,2 could not reasonably or possibly have been destroyed in the manner seen absent the use of [directed energy weapons]. Some of the defendants knew as much; other defendants ... should have known.

As a result of defendants' false statements and false or fraudulent reports and other submissions issued or delivered to NIST during the course of NIST's investigation in the years of 2002 to 2005, defendants wrongfully obtained payments from NIST which they knew or should have known they were not entitled to receive, by virtue of the fraud they were then and there committing.

Amended Complaint, ¶¶ 2, 5, 13–14. This is drawn from the introductory "Nature of the Action" section of the Amended Complaint, and yet this is *the most detailed* section of the Amended Complaint. Indeed, nothing in the rest of the Amended Complaint sets forth with additional particularity the false claims or statements at issue, or "the circumstances constituting fraud." Fed.R.Civ.P. 9(b).

Instead, the Amended Complaint goes on to briefly describe each of the Contractor Defendants, either with no specific allegations as to a given defendant's involvement, *see, e.g.,* Amended Complaint, ¶¶ 23, 25, 26–27, or with vague or generalized allegations as to a given defendant's involvement, *see, e.g., id.* ¶¶ 24 ("Between ARA and SAIC, some twenty-five (25) persons were assigned to work on, by literally surrounding and, accordingly, controlling and manipulating, NIST officials such that fraud ... did ... occur."); *id.* ¶ 29 ("That expertise [of Defendant GeoStats, Inc.] was used to perpetrate fraud in the preparation of NCSTAR 1."); *id.* ¶ 30 ("That expertise [of Defendant Gilsanz Murray Steficek, LLP] could have been, but was not, used for purposes of calling attention to the fact that the effects seen and left by the pattern of destruction of WTC 1,2 was caused by [directed energy weapons]. Instead, defendant chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly."); *id.* ¶¶ 31–41, 43 (containing nearly identical generalized allegations for other Contractor Defendants). Finally, the Amended Complaint conclusorily recites the elements of a cause of action under the FCA, *see* Amended Complaint, ¶¶ 62–70, and resorts to further collective generalizations about the Contractor Defendants, *see, e.g.,* ¶ 52 ("That modification [of the scope of NIST's objective] was at the behest and with the urging, backing and/or combined manipulative power of the defendants, acting singularly, collectively ... and otherwise."); *id.* ¶ 56 ("The various cost reports, requisitions, billing statements and/or requests for reimbursement submitted by the defendant NIST participants from and after 2002, through, at least, September, 2005, and, in many instances, continuing to the present, all contained false claims for reimburse-

ment and made false statements to NIST concerning work performed by them and/or consulting services rendered to NIST *because the true nature and intent was to mislead NIST and to cause a false causal statement concerning what caused the destruction of the WTC complex to occur.*" (emphasis added)); *id.* ¶¶ 59–60 (similar allegations).

These allegations are plainly insufficient under Rule 9(b). As the district court observed: the Amended Complaint "do[es] not cite to a single identifiable record or billing submission they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time." *Wood,* 2008 WL 2566728, at *5. Although scienter may be demonstrated by inference under Rule 9(b), that is not a "license to base claims of fraud on speculation and conclusory allegations." *O'Brien,* 936 F.2d at 676. While Wood may genuinely believe that the analysis and information provided by the Contractor Defendants is incorrect, that assertion—even accompanied by supporting evidence for Wood's own theory—does not warrant an inference that the services provided by the Contractor Defendants, and claims for payment submitted therewith, were fraudulent. We agree with the district court that the proposition that "NIST ultimately failed to conclude, consistent with [Wood's] hypothesis, that the Twin Towers was destroyed by the military's directed energy weapons," *Wood,* 2008 WL 2566728, at *4, falls short of the "ample factual basis [needed] to support [Wood's] charges." *O'Brien,* 936 F.2d at 676. Accordingly, we find that the district court appropriately dismissed Wood's Amended Complaint for failure to comply with Fed. R.Civ.P. 9(b).

## II.   Leave to Amend

Wood seeks leave to amend the Amended Complaint to cure her failure to con-

form with Rule 9(b). "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. One good reason to deny leave to amend is when such leave would be futile." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995); *see also Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, App. A, 584 (2d Cir.2005) ("Leave to amend may be denied following a Rule 9(b) dismissal if an amendment would be futile."). The district court dismissed Wood's Amended Complaint with prejudice, but did not address the request for leave to amend in Wood's briefing below. *See* J.A. 672. Nonetheless, "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litigation,* 466 F.3d 187, 220 (2d Cir.2006).

■   Our review of the record, as well as Wood's argument to this Court as to why leave to amend should be granted, convince us that the district court acted within its discretion. Wood vaguely asserts that she should be allowed to amend the Amended Complaint as follows:

Certainly, [Wood's] affidavits and other materials show that if a complaint were intended to be highly detailed, rather than, ultimately, a form of "notice" then she could have done that; namely, she could have provided a much more highly detailed complaint all as is confirmed by her prior Affidavits and their attachments. . . .

Plaintiff's Br. 38. Again, in explaining the assertion that Wood "merits leave to further amend her complaint to provide . . .

available particularity," Wood does not explain what this particularity might consist of, and merely argues that the Amended Complaint "tells us that the [Contractor Defendants] purposely turned a blind eye towards the fraud of not explaining what caused the destruction of the WTC, while purportedly doing just that." *Id.* 40–41. This is an inadequate basis to disturb the district court's discretionary decision to deny Wood leave to amend. *See Brandt v. Davis,* 191 F.3d 887, 893 (8th Cir.1999) ("In Brandt's motion to amend before the district court, and in his argument on appeal, he neglected to explain how he would amend the complaint to save the claim. We therefore find no abuse of discretion in the district court's denial of his motion to amend." (internal citation omitted)); *Doe v. Howe Military School,* 227 F.3d 981, 989 (7th Cir.2000) (finding that "the district court did not abuse its discretion in denying the Does' motions to amend the pleadings" where their "motions did not state what specifically the Does planned to allege in their amended pleadings"). Finally, Wood's suggested amendments in her reply brief come too late, *see, e.g., EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 625 n. 1 (2d Cir.2007) ("Although EDP did belatedly contend in its reply brief that the district court erred in its finding on these elements, its failure to press those arguments in its opening brief waives them."), and, in any event, are merely assertions in support of Wood's theory that directed energy weapons brought down the Twin Towers, *see* Plaintiff's Reply Br. 30–32—not specifics relating to fraudulent claims or statements made by the Contractor Defendants, which are required to comply with Rule 9(b).

Accordingly, we find that the district court did not abuse its discretion in dismissing Wood's Amended Complaint with prejudice.

### III. Sanctions

■ Without formally appealing the district court's decision to the contrary, *see* S.A. 1248 n. 15, Contractor Defendants Simpson, Gumpertz & Hager, Inc. ("SGH") and Computer Aided Engineering Associates, Inc. ("CAEA"), ask this Court to award them attorney's fees pursuant to 31 U.S.C. § 3730(d)(4). We review a district court's decision to grant attorney's fees under this provision for abuse of discretion. *Mikes v. Straus,* 274 F.3d 687, 704 (2d Cir.2001). Bearing "in mind that an award of attorneys' fees is well suited to the daily operations of the district court because such a decision may ultimately combine extensive factfinding ability with a large degree of discretion," *id.,* and the failure of SGH and CAEA to mount a cross-appeal, we decline to disturb the district court's exercise of discretion to warn, rather than sanction, Wood and her counsel.

### IV. Conclusion

We have considered all of Wood's arguments bearing on the adequacy of the pleadings in the Amended Complaint and Wood's request for leave to amend. We find them to be without merit, and as such, the district court's dismissal of Wood's claim with prejudice pursuant to Fed. R.Civ.P. 9(b) is AFFIRMED. Wood's motion to strike one of the two briefs filed by the Contractor Defendants is DISMISSED as moot.